THE STATE OF OHIO, APPELLANT *v.* CHIPPENDALE, APPELLEE.

[Cite as State *v.* Chippendale (1990), 52 Ohio St. 3d 118.]

(No. 89-812—Submitted April 11, 1990—Decided June 27, 1990.)

*Timothy A. Oliver,* prosecuting attorney, and *Carolyn A. Benninghoff,* for appellant.

*Ruppert, Bronson, Chicarelli & Smith Co., L.P.A.,* and *James D. Ruppert,* for appellee.

*Gregory A. White,* urging reversal for *amicus curiae,* Ohio Prosecuting Attorneys Association.

WRIGHT, J. This case presents the question of whether the state may charge and try a defendant for both involuntary manslaughter under a general provision, and aggravated vehicular homicide under a special provision. We answer this question in the affirmative, as the manifest legislative intent is that the two statutes be enforced coextensively. We therefore reinstate the decision and sentence of the Court of Common Pleas of Warren County.

I

It is a well-established principle of statutory construction that specific statutory provisions prevail over conflicting general statutes. *Volpe, supra,* at 193, 527 N.E. 2d at 820. In recognition of this principle, the General Assembly enacted R.C. 1.51, which deals with the proper application of general and special or local provisions, and reads:

"If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."

Thus, it is critical in the first instance to determine whether the statutes upon which the prosecution seeks to proceed are general, special or local. If the statutes are general and do not involve the same or similar offenses, then R.C. 1.51 is inapplicable.

However, if one of the statutes is general and one specific and they involve the same or similar offenses, we must then ask whether the offenses constitute allied offenses of similar import. To be allied offenses, "* * * the elements of the offenses [must] correspond to such a degree that the commission of one crime will result in the commission of the other * * *." *Newark* v. *Vazirani* (1990), 48 Ohio St. 3d 81, 549 N.E. 2d 520, syllabus. If we are treating allied offenses, then, according to R.C. 2941.25(A), "the indictment or information may contain counts for all such offenses, but the defendant may be convicted of [that is, sentenced on] only one." There is only one exception to this rule: "* * * If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of [that is, sentenced on] both offenses." *Vazirani, supra,* at the syllabus; R.C. 2941.25(B). Indeed, statutes falling under this single exception would be outside the purview of R.C. 1.51, as we are viewing several offenses with different time frames or separate animuses.

To summarize, R.C. 1.51 comes into play only when a general and a special provision constitute allied offenses of similar import and additionally do not constitute crimes committed separately or with a separate animus for each crime. When this is the case, we must proceed with our analysis of R.C. 1.51.

Where it is clear that a general provision of the Criminal Code applies

coextensively with a special provision, R.C. 1.51 allows a prosecutor to charge on both. Conversely, where it is clear that a special provision prevails over a general provision or the Criminal Code is silent or ambiguous on the matter, under R.C. 1.51, a prosecutor may charge only on the special provision. The only exception in the statute is where "* * * the general provision is the later provision and the manifest intent is that the general provision prevail." Thus, unless the legislature enacts or amends the general provision later in time and manifests its intent to have the general provision apply coextensively with the special provision, the special provision must be the only provision applied to the defendant.

II

Having laid out the proper framework to analyze general and special provisions, we turn to Chippendale's specific situation. Chippendale, as stated, was charged with involuntary manslaughter, R.C. 2903.04(B), and with aggravated vehicular homicide, R.C. 2903.06.

R.C. 2903.04(B), which pertains to the commission of a misdemeanor that proximately causes the death of another, is a general provision.[2] On the other hand, R.C. 2903.06 and 2903.07, which pertain to recklessly or negligently causing the death of another while operating a specified vehicle, are special provisions.[3] It is clear that the general provision, R.C. 2903.04(B), and the special provision, R.C. 2903.06(B), both deal with the same course of conduct.

Therefore we must proceed to the second step in our analysis and determine whether R.C. 2903.04(B) and 2903.06 are allied offenses of similar import. In *State* v. *Davis* (1983), 13 Ohio App. 3d 265, 270, 13 OBR 329, 334, 469 N.E. 2d 83, 88, the Court of Appeals for Clark County dealt with this question and applied our holdings on facts quite similar to the facts in this case. The court in *Davis* said:

"In the present matter the conduct involved was that of the defendant immediately prior to the collision. R.C. 2903.06, aggravated vehicular homicide, requires the reckless operation of a motor vehicle resulting in the death of another. Consequently, the defendant must be recklessly operating his vehicle, which is of itself a misdemeanor. Thus, a violation of R.C. 2903.06 will of necessity result in the violation of R.C. 2903.04(B), involuntary manslaughter. Consequently we conclude the two crimes are of similar import."

We agree and next ask whether the allied offenses with which Chippendale was charged were committed separately in time or with a separate animus for each offense under R.C. 2941.25(B). It is beyond dispute that the offenses with which Chippendale was charged occurred at one moment in time, the moment the accident occurred. Indeed the jury found that Chippendale was at that moment operating a motor vehicle negligently and that such conduct was the proximate cause of the death of Mrs. Baker, whose fatal injuries occurred at that moment. It is also clear that Chip-

---

[2] R.C. 2903.04(B) states:
"No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a misdemeanor."

[3] R.C. 2903.06 states:
"No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall recklessly cause the death of another."

pendale had only one intent or animus during this rapid series of events.

Since the offenses for which Chippendale was charged are allied offenses that occurred in one series of events and with one animus, we must now determine the effect of R.C. 1.51 on the general and special provisions with which Chippendale was charged. As we stated earlier, where a general and a special provision cover the same conduct, the legislature may expressly mandate that such provisions are to run coextensively. *Volpe, supra*; R.C. 1.51. In fact, the legislative history of R.C. 2903.04 manifests such an intent. Before amendment, the section of the House Bill that dealt with involuntary manslaughter, then R.C. 2903.05(B), specifically excluded aggravated vehicular homicide and vehicular homicide from constituting offenses under that section. Sub. H.B. No. 511, 109th General Assembly (1972), quoted in Goldsmith, Involuntary Manslaughter: Review and Commentary on Ohio Law (1979), 40 Ohio St. L.J. 569, 573, footnote 31. As the court in *State* v. *Davis, supra,* at 269, 13 OBR at 333, 469 N.E. 2d at 88, noted, the legislature, in enacting the final version of the involuntary manslaughter section, at R.C. 2903.04, removed this vehicular exemption. The court in *Davis* was quite correct in stating that the legislature declined to take advantage of this perfect opportunity to exclude vehicular deaths from the ambit of R.C. 2903.04. *Id.* at 270, 13 OBR at 334, 469 N.E. 2d at 88. We now hold that the court in *Davis* and those courts adopting its position were correct in declaring that the legislature clearly intended "* * * to permit a charge of manslaughter against persons involved in vehicular fatalities despite the more specific provisions for aggravated vehicular and vehicular homicide." *Id.*

Therefore the court of appeals in this case erred when it rejected the reasoning of the court of appeals in *Davis* and of those courts adopting the *Davis* court's reasoning. The court of appeals further erred when it failed to properly apply our decision in *State* v. *Volpe, supra.* These errors led the court of appeals to incorrectly reverse Chippendale's conviction and sentence on involuntary manslaughter.

Clearly, Chippendale's case involves a manifest legislative intent to have the general and special provisions at issue applied coextensively. Conversely, *Volpe, supra,* involved the legislature's manifesting an intent to have a special provision (prohibiting possession and control of a gambling device, R.C. 2915.02[A][5]), prevail over a general provision (prohibiting possession and control of criminal tools, R.C. 2923.24).

It is true that in *Volpe, supra,* at 193, 527 N.E. 2d at 820, we said that where two different statutes "* * * provide for different penalties for the same conduct, they cannot be construed to give effect to both." This is a correct statement of the law when the legislature has expressed its intent that a special provision prevail over a general one, as was the case in *Volpe, supra.* Additionally, we now hold that where the legislative intent is manifest that general and special provisions be applied coextensively and where the provisions are allied offenses of similar import, then the prosecution may charge on and try both, but the defendant may be sentenced upon his or her conviction for only one of the offenses.

We note finally that this holding is consistent with United States Supreme Court pronouncements in this area. That court, in *United States* v. *Batchelder* (1979), 442 U.S. 114, dealt with several federal statutes and penalties, each prohibiting a previously

convicted felon from receiving a firearm that had traveled in interstate commerce. The court stated:

"* * * [T]here is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements. In the former situation, once he determines that the proof will support conviction under either statute, his decision is indistinguishable from the one he faces in the latter context. * * *" *Id.* at 125.

The court of appeals erred in holding that the legislature expressed an intent to have the offense of aggravated vehicular homicide prevail over the offense of involuntary manslaughter. Thus, we find that under R.C. 2941.25, the prosecution properly charged Chippendale under both of these offenses and the trial court properly sentenced Chippendale on only one of these offenses, albeit on the offense carrying a greater penalty.

The decision of the court of appeals is reversed and the decision and sentence of the court of common pleas are reinstated.

*Judgment reversed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS and RESNICK, JJ., concur.

H. BROWN, J., dissents.

H. BROWN, J., dissenting. The majority opinion correctly notes that " 'a violation of R.C. 2903.06 [aggravated vehicular homicide] will of necessity result in a violation of R.C. 2903.04(B), involuntary manslaughter.' " However, it fails to note that violation of R.C. 2903.07, vehicular homicide, produces the same result. R.C. 2903.07(A) provides:

"No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall *negligently* cause the death of another." (Emphasis added.)

The negligent operation of a motor vehicle will almost always be a misdemeanor. See, *e.g., Stout* v. *Ellinger* (1951), 154 Ohio St. 418, 43 O.O. 346, 96 N.E. 2d 249 (failure to obey a stop sign in violation of predecessor to R.C. 4511.43 is negligence *per se*). Therefore, where a person causes the death of another by negligently operating a motor vehicle, he will be guilty of both involuntary manslaughter, R.C. 2903.04, and vehicular homicide, R.C. 2903.07.

In enacting the vehicular homicide statutes, the General Assembly made a clear distinction between reckless and negligent conduct. R.C. 2903.06, which requires a *mens rea* of recklessness, was a fourth degree felony; while R.C. 2903.07, which requires only negligence, was (and is) a first degree misdemeanor. Yet, under the majority's interpretation, both kinds of conduct may, at the prosecutor's option, be converted to a third degree felony by charging the offender under R.C. 2903.04(B). Thus, the majority has written the legislature's distinction out of the law. Our duty is to harmonize the law, not to rewrite it.

The distinction between aggravated vehicular homicide and vehicular homicide is critical in the instant case, since *appellee was found not guilty of aggravated vehicular homicide,* but guilty of vehicular homicide as a lesser-included offense. Thus, the majority has wiped out the finding in defendant's favor by a jury.

Accordingly, I would affirm the judgment of the court below.