## State v. Montecalvo
### *[Cite as 7 AOA 366]*

*Case No. 89CA004653*
*Lorain County, (9th)*
*Decided September 5, 1990*

Gregory A. White, Prosecuting Attorney, 226 Middle Ave., Elyria, Ohio 44035, for Plaintiff.

Harry R. Reinhart, Attorney at Law, 536 S. High St., Columbus, Ohio 43215 and Barbara J. Patterson, Attorney at Law, 146 South High Street, 9th Floor, Akron, Ohio 44308, for Defendant.

*Per Curiam.*

Michael Montecalvo, a certified paramedic and ambulance driver, appeals his convictions for failing to proceed cautiously past a red or stop signal in violation of R.C. 4511.03 and for

involuntary manslaughter, R.C. 2903.04(B). We affirm.

Montecalvo while driving an ambulance in response to an emergency call, drove through a red light and struck an automobile at the intersection of Broadway Avenue and Cooper Foster Park Road. Neither Montecalvo nor his fellow paramedic assistant were injured, however, the driver of the automobile, Angela Robinson, who was pregnant at the time, died as a result of the accident.

Montecalvo was indicted on six separate counts as follows:

Count 1 Aggravated vehicular homicide, R.C. 2903.06(A), with a physical harm specification;

Count 2 Involuntary manslaughter, R.C. 2903.04(B);

Count 3 Reckless operation, R.C. 4511.20;

Count 4 Emergency vehicles to proceed cautiously past red or stop signal, R.C. 4511.03;

Count 5 Obeying traffic control devices, R.C. 4511.12:

Count 6 Assured clear distance, R.C. 4511.21(A).

During trial, the court dismissed count five of the indictment finding the charge was not supported by the evidence. The jury found Montecalvo not guilty of aggravated vehicular homicide, reckless operation and assured clear distance. However, Montecalvo was found guilty of involuntary manslaughter and failing to proceed with due regard in an emergency vehicle past a red or stop signal as found in counts two and four of the indictment.

### Assignment of Error I.

"The court erred to the prejudice of the defendant in denying the defendant's multiple rule 29 motions to dismiss the involuntary manslaughter charge (Count 2) made before, during, following the trial of a traffic fatality, where the indictment also included the charge of aggravated vehicular homicide (Count 1), which was based upon the identical factual circumstances."

On the authority of State v. Chippendale (1990), 52 Ohio St. 3d 118, this assignment of error is overruled.

### Assignments of Error

"II. The Court erred to the prejudice of the defendant in denying the defendant's multiple rule 29 motions to dismiss the involuntary manslaughter charge, R.C. Section 2903.04(B), (Count 2) made before, during, and following the trial of a traffic fatality, where the indictment purports to identify the underlying requisite misdemeanor as a minor traffic offense, the mere violation of which would serve as the only condition for conviction. This is of particular consequence in view of the legislative limitations on the jurisdiction of the common pleas courts under Ohio Revised Code Section 2931.03."

"III. The court erred to the prejudice of the defendant in sustaining a verdict that was not supported by sufficient evidence, was contrary to law, and violated the due process clause of the constitution applicable to the states by the 14th amendment."

These two assignments of error are interrelated to a single issue and will be considered together.

R.C. 2903.04(B) provides that no person shall cause the death of another as a proximate result of committing or attempting to commit a misdemeanor. Appellant contends that misdemeanor as used in the statute does not include minor misdemeanor. However, there is no support from case law or the legislative history to suggest the exclusion of vehicular minor misdemeanors from the operation of the statute. Chippendale, supra. Most traffic offenses are minor misdemeanors.

A claim of insufficient evidence requires a determination that any rational trier of fact could find all the essential elements of the offense beyond a reasonable doubt after viewing, but not weighing, the probative evidence and construing reasonable inferences most favorable to the prosecution. State v. Martin (1983), 20 Ohio App. 3d 172, 175. In this case, there was sufficient probative evidence to support the defendant's conviction. Therefore, appellant's second and third assignments of error are overruled.

### Assignment of Error IV.

"The court committed error prejudicial to this defendant by instructing the jury on involuntary manslaughter, reckless operation, emergency vehicles to proceed, and assured clear distance and in refusing the defendant's proposed instructions requesting the court to charge on: (1) a specific criminal mens rea, (2) emergency, and (3) accident; the court, in addition, abused its discretion and denied the defendant a fair trial.

Montecalvo argues that the court's instruction to the jury was prejudicial.

A defendant has a right to expect that the trial court will give complete jury instructions on all issues raised by the evidence. *State v. Williford* (1990), 49 Ohio St. 3d 247, 251; *State v. Murray* (April 18, 1990), Lorain App. No. 4648, unreported. However, when the general charge does not contain the precise language requested by counsel, but sufficiently contains the substance of the law requested by the special instruction, no prejudice results from a failure to give the exact wording of the request. *State v. Guster* (1981), 66 Ohio St. 2d 266; *State v. Cecil* (March 25, 1987), Summit App. No. 12850, unreported.

Defendant's counsel requested an instruction on the *mens rea* of recklessness for the charge of involuntary manslaughter. It is not necessary that an instruction on the *mens rea* of recklessness be given when the involuntary manslaughter statute does not require that the culpable mental state of reckless be proven to support a conviction of involuntary manslaughter under R.C. 2903.04(B). The state must prove the *mens rea* of the supporting misdemeanor offense.

Counsel for defendant requested an instruction on the word emergency. In reviewing the defendant's proposed instruction on an emergency, the trial court noted:

"THE COURT: Then we will -- I think that in this case, after under emergency call, we add the first two lines of your charge, which says, 'an emergency is a serious and urgent situation which demands immediate use of a public safety vehicle,' period.

"Then we go to the second or we go to the Charge that says, 'if a driver proceeds with no reasonable grounds for believing that an emergency exists, even though he is using a siren and flashing, rotating lights when he approaches the intersection he forfeits or gives up his rights of an emergency vehicle.'

"MR. STERNBERG: You are making it better, Your Honor. No question about it. I don't know if I could start with a negative, the answer is better and more point to the law."

At defendant's urging, and without further objection the trial court modified the proposed instruction. The claim of error is not well taken.

In reviewing defendant's proposed instruction on accident, the trial court reasoned.

"THE COURT: In reviewing this particular Charge, I feel that this goes to argument rather than to what is appropriately charged and I don't think that it is appropriate in the Charge.

"Certainly, it goes to argument and certainly Counsel can argue that there are accidents that are beyond the control and so on and so forth."

The defendant suffered no material prejudice from the exclusion of the proposed instruction.

In our review of the court's instruction to the jury as a whole, we find that the charge adequately covered the law and issues presented by the evidence. Thus, the fourth assignment of error is overruled and the judgment of the trial court is affirmed.

The Court finds that there were reasonable grounds for this appeal.

*Exceptions.*

BAIRD, J., concurs.

CACIOPPO, J., dissenting.

I must respectfully dissent from the decision announced today regarding appellant's second and third assignments of error and would reverse Montecalvo's conviction for involuntary manslaughter.

Violations of municipal ordinances and state laws where the punishment is by fine alone have been recognized as quasi-criminal offenses and not strictly criminal cases. *Van Wert v. Brown* (1890), 47 Ohio St. 477, 480, citing *Markle v. Town Council of Akron* (1846), 14 Ohio 586, 589. See also, 25 Ohio Jurisprudence 3d (1981) 94, Criminal Law Sec. 2. The difference in procedures and penalty for the adjudication of minor misdemeanors in the criminal justice system underscores the idea that such quasi-criminal behavior should not support an involuntary manslaughter charge. For example, by statute, a violation of any statute or municipal ordinance where the penalty does not exceed a fine of $100, the accused does not have the right to a trial by jury. See, R.C. 2945.17. Such minor offenses, triable without a jury, have been deemed to be distinct from misdemeanors and constitute a separate class of offenses below the grade of misdemeanor. 21 Am. Jur. 2d (1981) 149, Criminal Law Sec. 30.

R.C. 2903.04(B) has the commission of a misdemeanor crime as a necessary predicate for a violation of this statute. Prior to the 1974 revision of the criminal statutes (Am Sub. H.B. No. 511, 134 Ohio Laws, Part II, 866), manslaughter was defined as an unlawful killing of

another without malice, either upon a sudden quarrel, or, unintentionally while the slayer is in the commission of some unlawful act. *Johnson v. State* (1902), 66 Ohio St. 59, 63. The court, in reversing Johnson's conviction, found that the reckless operation of bicycle could not support a manslaughter conviction since no statute or ordinance was in existence that declared such activity as unlawful. Common law negligence could not support a conviction.

In *State v. Chambers* (1977), 53 Ohio App. 2d 266, this court recognized that R.C. 2903.04 came into being with the recodification of our criminal code in 1974. Thus, interpretation of this code section and its meaning is not assisted by past precedent in this state. *Id.* at 268.

The legislative history of the current version of the involuntary manslaughter statute is set forth in Goldsmith, Involuntary Manslaughter: "Review and Commentary on Ohio Law (1979), 40 Ohio St. L.J. 569." The legislative history discusses the creation of the vehicular homicide statutes as well as the formation of the involuntary manslaughter statute.

R.C. 2903.07(A) is the current law governing negligent vehicular homicide. This offense is substantively the same as aggravated vehicular homicide, R.C. 2903.06, in all respects but one, the offense is based on negligence rather than recklessness. The pre-1974 offense of second degree vehicular homicide was based on a violation of any traffic statute other than those dealing with drunk driving, reckless operation and drag racing. Legislative Comment to R.C. 2903.07. However, until *Chippendale,* (1990), 52 Ohio St. 3d 118, it was questioned as to whether the vehicular homicide statutes, R.C. 2903.06 and 2903.07, would preclude a charge of involuntary manslaughter where a death was the result of an automobile accident. The *Chippendale* court, relying on the legislative history as found in *Goldsmith, supra,* held that the court in *State v. Davis* (1983), 13 Ohio App. 3d 265, and courts adopting its position were correct in declaring that the legislature clearly intended to permit a charge of manslaughter against persons involved in vehicular fatalities despite the more specific provisions for aggravated vehicular homicide and vehicular homicide. *Chippendale, supra,* at 122. However, it does not necessarily follow from this holding that the legislature intended to allow any type of misdemeanor offense to serve as the necessary predicate for an involuntary manslaughter conviction. The plain language of the statute must be examined to determine the intent of the legislature in writing it.

I find the observations of professors LaFave and Scott particularly persuasive on this subject.

"*** There is no logical reason for inflicting manslaughter punishment on one who unintentionally kills another simply because he is committing a traffic violation, unless it makes sense to punish the one-in-a-thousand traffic violation, which by bad luck produces an unexpected death, for more severely than the nine hundred and ninety-nine violations which happily do not produce any such devastating result. *** It is true that, in the case of crimes defined in terms of bad result, it is often something of an accident whether the specified result occurs or not. Where one seriously wounds another by shooting at him with intent to kill, or severely but unintentionally injures him by reckless driving, chance often takes a hand in deciding whether the victim dies or recovers, and thus whether the defendant receives a greater or lesser punishment. If the bad result which happens is actually intended, or if it is recklessly produced (especially by one conscious of the risk), it does not seem too harsh to make the severity of his punishment depend somewhat on the actual result, however accidental. Where, however, the result is both unintended and produced without any consciousness of the risk of producing it, it seems too harsh and illogical. Involuntary manslaughter, therefore, ought, on principle, to be limited to the situation of unintended homicide by criminal negligence. ***." LaFave and Scott, Criminal Law (2 Ed. 1986) 683, Section 7.13.

With this background, it must be determined as a matter of statutory construction and legislative intent whether a violation of a minor misdemeanor, R.C. 4511.03, can serve as the necessary predicate for a conviction of R.C. 2903.04(B).

R.C. 2901.04 provides, in pertinent part:

"Sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused.

"***."

See also, *State v. Dickinson* (1971), 28 Ohio St. 2d 65, 70. R.C. 4511.03 provides:

"The driver of any emergency vehicle or public safety vehicle, when responding to an emergency call, upon approaching a red or stop signal or any stop sign shall slow down as

necessary for safety to traffic, but may proceed cautiously past such red or stop sign or signal with doe regard for the safety of all persons using the street or highway."

R.C. 4511.99, the penalty statute states, in part:

"(E) Whoever violates sections 4511.01 to 4511.76 of the Revised Code, for which no penalty is otherwise provided in this section, is guilty of a minor misdemeanor on a first offense, on a second offense within one year of the first offense such person is guilty of a misdemeanor of the fourth degree[.]"

The classification of offenses statute, R.C. 2901.02, states:

"As used in the Revised Code:

"(A) Offenses include aggravated murder, murder, aggravated felonies of the first, second, and third degree, felonies of the first, second, third, and fourth degree, misdemeanors of the first, second, third, and fourth degree, minor misdemeanors, and offenses not specifically classified.

"***

"(F) Any offense not specifically classified is a misdemeanor if imprisonment for not more than one year may be imposed as a penalty.

"(G) Any offense not specifically classified is a minor misdemeanor if the only penalty which may be imposed is a fine not exceeding one hundred dollars.

"***."

The Legislative Comment to R.C. 2901.02 notes:

"This section classifies offenses into two degrees of murder, *four degrees* each of felony and *misdemeanor, minor misdemeanors,* and offenses not specifically classified. The purpose of the classification is to permit a high level of flexibility in characterizing offenses and assessing penalties for their violation according to their comparative seriousness.

"***." (Emphasis added.)

The involuntary manslaughter statute, R.C. 2903.04(B) states:

"No person shall cause the death of another proximate result of the offense's committing or attempting to commit a misdemeanor.

(C) Whoever violates this section is guilty of involuntary manslaughter. ***."

Following the rules of statutory construction, the statutes above must be strictly construed against the state and liberally construed in favor of the accused. The violation of R.C. 4511.03, that served as the predicate for Montecalvo's involuntary manslaughter conviction, is a minor misdemeanor on a first offense as found in the penalty statute. It is clear from both the language of the classification statute and legislative comment that minor misdemeanors are classified differently from misdemeanors which range·in degree from first to fourth. The differentiation in classification is significant. When the General Assembly created a separate class of offenses as minor misdemeanors, they did not define such offenses as an additional lesser degree within misdemeanor offenses from the first to fourth degree, but created a distinct class of offenses. This is consistent with the idea that minor misdemeanors are only quasi-criminal behaviors. Thus, as a matter of statutory construction, misdemeanors are a distinct class of offenses from minor misdemeanors with proof of the former necessary for an involuntary manslaughter conviction. The involuntary manslaughter statute requires the commission of a misdemeanor offense and not a minor misdemeanor offense as a necessary predicate, therefore, Montecalvo's conviction should not stand.

Further as a matter of legislative intent, we note from *Chippendale, supra,* that the legislature, in enacting the final version of the involuntary manslaughter section, at R.C. 2903.04, removed the vehicular exemption. It is true that the legislature may have intended to permit a manslaughter charge against persons involved in vehicular fatalities, but it does not necessarily follow that a violation of any class of misdemeanor, either minor misdemeanors or first through fourth degree misdemeanors may serve as a predicate for an involuntary manslaughter conviction. It is indeed illogical to equate the operation of a vehicle under the influence of alcohol, as in *Chippendale, supra,* with a failure of due regard in the operation of an emergency vehicle, on route to an emergency.

I agree with the majority of this panel that most traffic offenses are minor misdemeanors. However, numerical majority alone does not indicate that the General Assembly consider all traffic offenses equally culpable. For example, R.C. 4511.99(A)(1), driving under the influence of drugs or alcohol, is a misdemeanor of the first degree for a first time offense and a court can impose a jail sentence of three days for a first offense. R.C. 4511.99(D) addresses speeding violations and provides that certain violations may be classified as a misdemeanor of the fourth degree for a first offense. Such speeding

violations include driving faster than 35 mph in a business district or in a school zone during recess or arrival and departure times.

What is needed in the misdemeanor involuntary manslaughter statute is a threshold requirement that states that certain Conduct must have a culpable mental state of criminal negligence or a wanton or reckless *mens rea.* See, *Commonwealth v. Welansky* (1944), 316 Mass. 383, 55 N.E. 2d 902. This would avoid the possibility that involuntary manslaughter could become a crime of strict liability with individuals imprisoned without proof of any criminal intent.

In *Chippendale, supra,* the court recognized that a violation of R.C. 2903.06, aggravated vehicular homicide, will of necessity result in a violation of R.C. 2903.04(B), involuntary manslaughter. *Id.* at 121. However, as Justice Brown noted in his dissent in *Chippendale, supra,* a violation of R.C. 2903.07, vehicular homicide, produces the same result. *Id.* at 123. Negligently, as found in R.C. 2901.22(D) is defined as follows:

"(D) person acts negligently when, because of a substantial lapse from due care [.]"

Although the definition of negligence in the criminal code is structured similarly to the definition of ordinary negligence used in tort law, it defines a higher degree of negligence than ordinary negligence. Legislative Comment to R.C. 2901.22. For one to be negligent under this section, he must be guilty of a substantial departure from due care, whereas ordinary negligence merely requires a failure to exercise due care. *Id.*

In the instant case, a violation of R.C. 4511.03 occurs when Montecalvo failed to use due regard for the safety of all persons using the street or highway. Without due regard, as used in a similar statute, R.C. 4511.20, the pre-1983 version of the reckless operation of a vehicle statute, means that a person must operate such a vehicle in the same manner as would a reasonably prudent person under similar circumstances. *State v. Martin* (1955), 164 Ohio St. 54, paragraph one of the syllabus. Thus, what is used to support Montecalvo's involuntary manslaughter conviction is ordinary negligence. It is indeed ironic that his negligent conduct could not support a conviction for vehicular homicide under R.C. 2903.07, a first degree misdemeanor, but is sufficient to support an aggravated felony of the third degree.

The decision today represents an unwarranted extension of the *Chippendale, supra,* decision. While the *Chippendale* court would permit criminal negligence as found in R. C. 2903.07 and defined in 2901.22(D), sufficient to support a misdemeanor involuntary manslaughter conviction, it does not follow that ordinary negligence as found in R.C. 4511.03 should produce the same result.

A better rule of law would require the commission of a act that would involve a culpable mental state of at least criminal negligence or the intent of willful and wanton, as found in the current R.C. 4511.20 (reckless operation) which has been interpreted to rise above a level of ordinary negligence. See, *State v. Earlenbaugh* (1985), 18 Ohio St. 3d 19.

When a situation arises that would necessitate the assistance of a paramedic with a vehicle full of life saving equipment, we expect emergency personnel to proceed to the accident site with the utmost dispatch. Ohio law, specifically R.C. 4511.24, exempts the operators of the vehicles from the highway speed limits while operating in the emergency mode or on route to an emergency. It does not follow that the General Assembly intended emergency vehicle operators who fail to use due regard at intersections on the way to a life threatening emergency call and are involved in a vehicular accident to be punished as severely as a drunken driver. Both ambulance driver and an inebriated driver may be involved in a homicide resulting from the operation of a vehicle, but the difference in their culpability is significant. Therefore, as both a matter of statutory construction and legislative intent a minor misdemeanor offense, R.C. 4511.03, standing alone should not serve as the necessary predicate for a conviction of misdemeanor involuntary manslaughter. A state of culpability above ordinary negligence should be a threshold requirement for a conviction under R.C. 2903.04(B).

Further, I find the court's instruction, in its entirety was misleading.

The trial court's instruction implied that a finding of simple negligence or lapse of due care that could not support a conviction for aggravated vehicular homicide, a felony, of the fourth degree, however, a finding of a lapse of due regard was sufficient to support a conviction of the minor misdemeanor, which served as the underlying offense for involuntary manslaughter, an aggravated felony of the third degree. This charge led the jury to believe that the

involuntary manslaughter charge was a crime lesser in degree and less culpable than the aggravated vehicular homicide charge.

Therefore, based on the foregoing discussion, I would affirm Montecalvo's conviction for a violation of R.C. 4511.03. However, his conviction for involuntary manslaughter as charged in the indictment should be reversed. Further, I would modify the court's order of restitution. A trial court may not impose a condition that is not authorized by law. *State v. Bilder* (Dec. 9, 1987), Summit App. No. 13190, unreported. The penalty for the commission of a minor misdemeanor is a fine only. See, Legislative Comment to R.C. 2929.21. Accordingly, R.C. 4511.99(E) does not authorize a restitution award for medical bills or funeral expenses.

The imprisonment of a paramedic ambulance driver who committed an act of simple negligence that resulted in a fatal accident will not avenge a young woman's tragic death. The decision reached today represents neither the law nor justice. Therefore, I must respectfully dissent.