[Cite as *State v. Warfel*, 2017-Ohio-5766.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| COUNTY OF MEDINA | )ss:<br>) | NINTH JUDICIAL DISTRICT |

| STATE OF OHIO | C.A. No. 16CA0062-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT<br>ENTERED IN THE |
| ERIC M. WARFEL | COURT OF COMMON PLEAS<br>COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 15-CR-0430 |

DECISION AND JOURNAL ENTRY

Dated: July 10, 2017

SCHAFER, Presiding Judge.

**{¶1}** Defendant-Appellant, Eric M. Warfel, appeals from his criminal convictions in the Medina County Court of Common Pleas. For the reasons set forth below, we affirm.

I.

**{¶2}** At approximately 10:00 a.m. on July 29, 2015, a cable installer arrived at Warfel's apartment in Medina, Ohio, in order to update cable equipment. When the cable installer realized that nobody was at home, he went to the apartment complex's office and obtained a key to Warfel's unit. Upon entering Warfel's unkempt apartment, the cable installer discovered the badly decomposed corpse of Warfel's 20-month-old daughter, E.W. The cable installer immediately exited the apartment and informed his supervisor and the apartment complex's office of what he had discovered inside Warfel's apartment. The Medina City Police Department was then notified and officers quickly arrived at the scene. During the course of their investigation, law enforcement also discovered cocaine and drug paraphernalia within

Warfel's apartment. Law enforcement were also able to establish that Warfel and his seven-year-old daughter were presently located in Westlake, Ohio. Medina City Police contacted the Westlake Police Department and asked them to keep an eye out for Warfel.

{¶3} The Westlake Police Department soon located Warfel's car in the Crocker Park Shopping Center parking lot. The Westlake Police Department subsequently conducted a traffic stop of Warfel's vehicle and took Warfel into custody. Law enforcement eventually learned that Warfel and his seven-year-old daughter had been staying in a Motel 6 located in Middleburg Heights, Ohio. Upon searching that motel room, law enforcement discovered additional cocaine and drug paraphernalia.

{¶4} On August 4, 2015, the Medina County Grand Jury indicted Warfel on one count of gross abuse of a corpse in violation of R.C. 2927.01(B), a fifth-degree felony, and one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony. Warfel pleaded not guilty by reason of insanity to these charges and the trial court thereafter referred Warfel to the Akron Psycho-Diagnostic Clinic for competency and sanity evaluations. On September 9, 2015, the Medina County Grand Jury indicated Warfel on three counts of child endangerment in violation of R.C. 2919.22(A)(E)(1)(2)(a), all first-degree misdemeanors, and one count of possession of cocaine in violation of R.C. 2925.11(A)(C)(4)(a), a fifth-degree felony. Warfel also pleaded not guilty by reason of insanity to these additional charges.

{¶5} On November 9, 2015, the trial court held a pre-trial hearing at which time it provided the parties with the medical reports from Warfel's competency and sanity evaluations. The reports concluded that Warfel was competent to stand trial and that Warfel understood the wrongfulness of his actions at the time of the alleged offenses. The trial court accepted the

conclusions contained within these reports and determined that Warfel was competent to stand trial. Warfel stipulated to the competency and sanity reports.

{¶6} On November 18, 2015, the Medina County Grand Jury indicted Warfel on one additional count of possession of cocaine in violation of R.C. 2925.11(A)(C)(4)(a), a fifth-degree felony, to which Warfel pleaded not guilty. The Medina County Grand Jury subsequently amended this lattermost count to include a broader timeframe that the offense allegedly occurred. Warfel pleaded not guilty to the amended indictment. On May 23, 2016, the morning of trial, Warfel waived his right to a jury trial. Warfel also withdrew his previous pleas of not guilty by reason of insanity, having previously stipulated to the competency and sanity reports. The matter then proceeded to a multi-day bench trial.

{¶7} At trial, 14 witnesses testified on the State's behalf. At the close of the State's case-in-chief, Warfel made a Crim.R. 29 motion for judgment of acquittal on all seven counts, which the trial court denied. The defense subsequently rested without calling any witnesses. The parties thereafter submitted written briefs containing their respective closing arguments and the trial court took the matter under advisement. The trial court ultimately found Warfel guilty of all seven counts and sentenced him according to law.

{¶8} Warfel filed this timely appeal and raises four assignments of error for this Court's review. As Warfel's first and second assignments of error implicate similar issues, we elect to address them together.

II.

**Assignment of Error I**

**The evidence is insufficient to sustain a conviction of gross abuse of a corpse, R.C. 2927.01(B).**

**Assignment of Error II**

**The evidence is insufficient to sustain a conviction of tampering with evidence in violation of R.C. 2921.12(A).**

{¶9}    In his first and second assignments of error, Warfel argues that the State failed to meet its burden of production with respect to Count One, abuse of a corpse, and Count Two, tampering with evidence.  We disagree.

{¶10}   "'We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence.'"  *State v. Smith*, 9th Dist. Summit No. 27389, 2015-Ohio-2842, ¶ 17, quoting *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33.  A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."  *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  "Circumstantial and direct evidence inherently possess the same probative value."  *Id*. at paragraph one of the syllabus.  After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Id.*  Although we conduct de novo review when considering a sufficiency of the evidence challenge, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact."  *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775 , ¶ 33.  This matter implicates Warfel's convictions for abuse of a corpse in violation of R.C. 2927.01(B) and tampering with evidence in violation of R.C. 2921.12(A)(1).

Warfel does not challenge the sufficiency of the State's evidence with respect to his other convictions.

**{¶11}**  R.C. 2927.01(B) states that "[n]o person, except as authorized by law, shall treat a human corpse in a way that would outrage reasonable community sensibilities."  The culpable mental state required for a violation of R.C. 2927.01(B) is recklessness.  *State v. Condon*, 1st Dist. Hamilton No. C-020262, 2003-Ohio-2335, ¶ 34, 50.  "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature."  R.C. 2901.22(C).  R.C. 2921.12(A)(1), on the other hand, provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]" "Knowingly" is defined in R.C. 2901.22(B) as follows: "A person acts knowingly, regardless of his purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when the person is aware that such circumstances probably exist."  Proof of intent is often derived from circumstantial evidence, as direct evidence will seldom be available.  *State v. Tarver*, 9th Dist. Summit No. 22057, 2004-Ohio-6748, ¶ 10, citing *State v. Lott*, 51 Ohio St.3d 160, 168 (1990).

**{¶12}**  At trial, 14 witnesses in total testified on behalf of the State.  The cable installer testified that at approximately 10:00 a.m. on July 29, 2015, he entered Warfel's apartment in order to change cable equipment.  The cable installer testified that the apartment was in an "extreme case of disarray" with garbage and toys all over the floor.  He further testified that upon

entering the apartment's second bedroom, he noticed a "badly decomposed" baby in a crib. The cable installer described the body's skin as being all black and noted the corpse was wearing a white diaper. The cable installer immediately left the apartment and the authorities were subsequently notified.

{¶13} Brian Cavanaugh, a paramedic with the Medina Life Support Team, was the first person to arrive at the scene. Mr. Cavanaugh testified that he arrived at Warfel's apartment at roughly 10:00 a.m. in response to a report of infant cardiac arrest. Mr. Cavanaugh testified that he forced his way into Warfel's apartment, which he described as having a lot of trash, debris, boxes, and food all over the place. Mr. Cavanaugh testified that he found a deceased infant wearing a diaper in a crib. He described the deceased infant as having "blackened skin." He further testified that he could see hair on the body, but was unsure of the infant's age or if the infant had any bruises due to the body's state of decomposition. Mr. Cavanaugh testified that he subsequently radioed for law enforcement and waited for them to arrive. Lastly, Mr. Cavanaugh testified that when Sergeant Scott Marcum of the Medina City Police Department arrived on the scene, the two of them searched and sealed-off the apartment until more officers arrived.

{¶14} Sergeant Marcum buttressed Mr. Cavanaugh's testimony. Specifically, Sergeant Marcum testified that he arrived on the scene at 10:39 a.m. and searched the apartment with Mr. Cavanaugh. He testified that upon searching the apartment, he saw a badly decomposed body. Sergeant Marcum testified that he could not tell the infant's race or age and could not observe any lacerations or bruises on the body due to its state of decomposition. Moreover, Sergeant Marcum testified that he could not see anything that could have contributed to the infant's death, such as malnourishment. Lastly, Sergeant Marcum testified that he exited and sealed the crime scene and waited for the detective's bureau to arrive with a search warrant.

{¶15} Sergeant Brett McNabb, an officer with the Medina City Police Department who heads the department's detective bureau, testified that he was in Warfel's apartment on the day that the body was discovered. Sergeant McNabb testified that the state of the body's decomposition left the detective bureau unable to identify the infant, or even estimate a time, cause, or location of death. Sergeant McNabb also testified that he could not observe postmortem lividity on the body.

{¶16} Next, Special Agent George Staley of the Ohio Bureau of Criminal Investigation testified that the Medina City Police Department summoned him to Warfel's apartment on July 29, 2015, to investigate an infant's death. Agent Staley testified that his role in the investigation was to collect evidence and confer with law enforcement to ensure that the investigation was properly conducted. Specifically, Agent Staley testified that he took pictures of Warfel's "unkempt" and "cluttered" apartment. He stated that the room where the deceased infant was discovered contained flies, pupae, and a "bunch of dirty diapers" on the floor. He further testified that flies and fly larvae were present in the crib with the deceased. Agent Staley further testified that the decomposed body was missing soft tissue, such as lips, eyes, and the underside of the throat and neck area. Lastly, Agent Staley testified that the body's advanced state of decomposition prevented him from establishing the infant's age, race, gender, or time of death. It also prevented him from establishing the presence of any injuries, signs of assault, signs of any postmortem lividity, or signs of illness, malnourishment, air starvation, or strangulation.

{¶17} Doctor Neil Grabenstetter, the Medina County Coroner, testified that he went to Warfel's apartment on July 29, 2015, in response to a report that remains of a young child had been discovered. Dr. Grabenstetter testified that by observation alone, the corpse was unrecognizable and in an advanced state of decomposition. He further testified that he could not

observe the corpse's sex or race and could not see any injuries or detectable lacerations. He stated that because the infant's exposed skin had dried out and mummified, he could not tell if the infant had been the victim of dehydration, malnutrition, disease, or shaken baby syndrome. Dr. Grabenstetter testified that he then ordered that the corpse be transported to the Cuyahoga County medical examiner's office for an autopsy. According to Dr. Grabenstetter's testimony, the autopsy report was unable to determine a cause of death due to the nature of the decomposition. Dr. Grabenstetter testified that the decomposition of most of the body's soft tissue organs impaired his ability to perform his duties as Medina County Coroner, such as determining a cause of death. For example, Dr. Grabenstetter stated that the infant's eyes and heart had fully decomposed, and only a small portion of the infant's brain and one lung remained. Dr. Grabenstetter stated that no blood or urine was present in the body. Lastly, Dr. Grabenstetter testified that from his observation, it appeared that the infant's death was not immediately reported.

{¶18} Detective Sarah Lynn of the Medina City Police Department testified that due to the length of time that passed between the infant's death and the discovery of the infant's body, she was unable to determine when or where the infant died. Detective Lynn further testified that on July 29, 2015, she was assigned to locate Warfel following the discovery of the deceased infant in his apartment. Detective Lynn testified that during the course of her investigation, she was able to learn that Warfel and Warfel's seven-year-old daughter were in Westlake, Ohio. She further testified that upon communicating this information to the Westlake Police Department, Westlake police officers were able to locate Warfel's vehicle in the Crocker Park Shopping Center parking. Westlake police officers subsequently conducted a traffic stop of Warfel's vehicle and took Warfel into custody. Detective Lynn testified that upon learning that Warfel

was in custody, she drove to Westlake, took control of Warfel, and transported him to Medina to be interviewed.

{¶19} Detective Lynn testified that Warfel stated the following during the course of his interview with Medina City Police Department personnel: that he has lived at the apartment in Medina with his two daughters since January 2015 and that his two daughters shared a bedroom. Warfel indicated during the interview that the deceased infant found in the crib in his apartment was his 20-month-old daughter, E.W. Warfel stated that he last saw E.W. alive on June 18, 2015, at 10:00 p.m. when he put his daughters to bed. He stated that when he awoke the following morning, he discovered that E.W.'s eyes were black and that her fingers were purple. He stated that he picked up E.W. from the crib and administered rescue breaths, but realized that she was already dead. He then placed E.W. back in the crib, placed a crucifix next to her body, and exited the bedroom. Upon exiting the bedroom, Warfel "shut the door and put boxes in front of [the door], including a vacuum box, just to keep [his other daughter] away." Warfel stated during his interview that he only reentered the bedroom one other time, which was to retrieve a pillow for his other daughter on June 24, 2015. Warfel stated that when he reentered the room to get the pillow, E.W.'s body was black. Warfel stated during the interview that he probably should have covered E.W.'s body with a sheet, but that he did not do so. Warfel admitted that he was addicted to cocaine at the time of E.W.'s death. Warfel also stated that following E.W.'s death, he and his other daughter would stay in motels if he had the money to do so.

{¶20} Per Detective Lynn's testimony, Warfel admitted during the interview that he never called police, emergency care providers, doctors, coroners, or family members at any time following E.W.'s death. Warfel also stated during the interview that he expected an autopsy could have been performed on E.W. if he had reported her death. Warfel's reasons for not

reporting E.W.'s death included not being able to tell his ex-wife and parents about E.W.'s death, especially since he had another infant daughter who passed away unexpectedly in 2013. Warfel also stated that he did not report E.W.'s death because he was concerned about losing custody of his seven-year-old daughter and was also concerned about his messy apartment that contained drugs. He also stated that he conducted a Google search on his phone to find out whether he was committing a crime by not reporting E.W.'s death, but ultimately determined that he was not committing a crime by not doing so. However, Warfel admitted that he felt like he was doing something wrong by not reporting his daughter's death.

{¶21} Lastly, Warfel stated during the interview that he kept his other daughter busy following E.W.'s death so that she would not ask about her little sister. He also stated that he told his parents that E.W. was at daycare whenever they inquired of her whereabouts. The wife of one of Warfel's friends later testified at trial that she encountered Warfel on July 25, 2015, at a family movie night in Medina Square. This individual testified that when she inquired about E.W.'s location, Warfel told her that E.W. was at daycare and that he would pick her up later that night. Warfel admitted during his interview with Detective Lynn that he never enrolled E.W. in daycare. Warfel also incorrectly told this individual that his ex-wife communicates with their daughters "about three times a week."

{¶22} Warfel argues that the evidence presented at trial was insufficient to convict him of gross abuse of a corpse because the State failed to demonstrate that he treated E.W.'s corpse in a manner that would outrage reasonable community sensibilities. Specifically, Warfel contends that R.C. 2729.01(B) requires the State to prove that he committed an "affirmative act" with respect to E.W.'s corpse and that an omission, to wit: failing to report a death, is insufficient to obtain a conviction under the statute. We reject Warfel's argument. "[R.C. 2927.01(B)]

clearly proscribes a broad range of conduct provided that is so inappropriate and insensitive as to outrage community standard. The statute does not require that the corpse be physically abused." *Condon*, 2003-Ohio-2335, at ¶ 52. Indeed, the statute's language does not require an affirmative act as Warfel suggests in his merit brief.

**{¶23}** Thus, viewing the evidence of this case in a light most favorable to the State, we conclude that the evidence presented at trial was sufficient for the trial judge to convict Warfel of gross abuse of a corpse in violation of R.C. 2927.01(B). As previously noted, Detective Lynn and Sergeant McNabb testified at trial that Warfel never told anybody about E.W.'s death until after her body was accidentally discovered. Instead, the evidence at trial demonstrates that E.W. died on or about June 19, 2015, and that her body was discovered by a utility worker nearly six weeks later on July 29, 2015. Between the date of E.W.'s death and the discovery of E.W.'s body, Detective Lynn's trial testimony demonstrates that Warfel left his youngest daughter's body in her crib and simply avoided entering that room and even stayed in motels whenever possible. Several witnesses testified in graphic detail about the condition of E.W.'s body the day that it was discovered. Specifically, several witnesses testified that E.W.'s body had decomposed so badly that they were unable to determine the infant's age, race, or gender, or even the time, location, or cause of the infant's death. This was because the infant's body had decomposed so badly that most of the body's soft tissue, including the eyes and lips, no longer remained. Dr. Grabenstetter, the Medina County coroner, testified that the exposed skin on the infant's body had mummified. Moreover, Special Agent Staley testified that flies, pupae, and larvae were present alongside the body in the crib.

**{¶24}** We determine that Warfel's failure to report his daughter's death and failure to properly handle her remains (i.e. permitting a body to decompose beyond recognition and to an

extent that prevented a meaningful autopsy) was sufficient evidence for the trier of fact to determine that Warfel abused E.W.'s corpse.

{¶25} With respect to Warfel's tampering with evidence conviction, we likewise conclude that the State presented sufficient evidence on this count. In addition to the evidence that the State presented on the gross abuse of a corpse, Detective Lynn also testified that Warfel stated that he had another daughter that passed away unexpectedly in 2013 under similar circumstances. At that time law enforcement conducted an investigation and an autopsy was performed. Following this revelation, Warfel told investigators during his police interview that he expected that an autopsy could have been performed on E.W. if he had reported her death. Warfel also stated during this interview that he should have covered E.W.'s body with a sheet, but that he did not do so. Warfel also admitted to conducting a Google search on his phone following E.W.'s death to see if he was committing a crime by not reporting her death, but that he concluded that he was not. However, Warfel stated that he felt like he was doing something wrong by not reporting her death. Moreover, Detective Lynn testified that Warfel stated during the interview that upon discovering E.W.'s dead body, he closed the door to her bedroom and placed boxes in front of the door to prevent his other daughter from accessing the room. Also, evidence was presented at trial demonstrating that Warfel lied to his parents and friends whenever they would inquire of E.W.'s whereabouts following her death. Specifically, the testimony at trial indicates that Warfel would tell people that E.W. was at daycare, when in fact he had never enrolled her in daycare and E.W. was already dead.

{¶26} Furthermore, Dr. Grabenstetter explicitly testified that the body's decomposition impaired him from performing his official duties because he could not determine a cause of death. Sergeant McNabb testified to same. Dr. Grabenstetter further testified that the infant's

corpse was unrecognizable and in an advanced state of decomposition on the date of its discovery. Namely, he could not determine the corpse's sex or race, and could not detect any signs of injury or lacerations. Dr. Grabenstetter further testified that the autopsy report was unable to determine a cause of death due to the nature of decomposition. He noted that much of the body's soft tissue no longer remained, including the eyes, heart, and all but a small portion of the brain and one lung. He also noted that no blood or urine remained in the body. Lastly, Dr. Grabenstetter testified that it appeared to him that the infant's death was not immediately reported to the authorities.

{¶27} Viewing this evidence in a light most favorable to the State, we conclude that the evidence presented at trial was sufficient for the trial judge to convict Warfel of tampering with evidence in violation of R.C. 2921.12(A)(1). The aforementioned evidence, if believed, demonstrates that Warfel, knowing that an official investigation and autopsy would be conducted if he reported his daughter's death to the authorities, concealed E.W.'s body from discovery with purpose to impair its value or availability as evidence in such an investigation and autopsy. Warfel argues on appeal that he did not actually "conceal" E.W.'s body, but rather left it unexposed in a crib for nearly six weeks. However, the evidence at trial, which we must construe in favor of the State, indicates that in addition to leaving E.W.'s body in the crib, Warfel closed the bedroom door, placed boxes in front of the door to prevent entry, and consistently lied to family members and friends in order to make it appear as though E.W. were still alive. We conclude that such evidence was sufficient for the trier of fact to convict Warfel of tampering with evidence in violation of R.C. 2921.12(A)(1).

{¶28} Accordingly, Warfel's first and second assignments of error are overruled.

**Assignment of Error III**

**The trial court erred by failing to dismiss the charge of tampering with evidence because the State indicted for the general statute rather than the specific statute enacted to address the Appellant's conduct.**

{¶29} In his third assignment of error, Warfel asserts that the trial court erred by failing to dismiss the tampering with evidence and gross abuse of a corpse charges because he should have been charged with the more specific crime of failing to report knowledge of a death in violation of R.C. 2921.22(C).[1]  Specifically, Warfel argues that the principles of statutory construction require the specific statutory provision that addresses failing to report knowledge of a death to "prevail" over the general tampering with evidence and gross abuse of a corpse statutes contained in R.C. 2921.12(A) and R.C. 2927.01(B), respectively.  We disagree.

{¶30} A careful review of the record reveals that Warfel never requested the trial court to dismiss the gross abuse of a corpse and/or tampering with evidence charges.  Thus, because Warfel did not ask the trial court to dismiss the gross abuse of a corpse or tampering with evidence charges, or otherwise object on the basis that the State improperly charged him under the "general" statutes instead of the "specific" statute contained in R.C. 2921.22(C), he has forfeited all but plain error on this issue.  *See State v. Davis*, 9th Dist. Summit No. 21762, 2004-Ohio-3704, ¶ 4.  However, Warfel failed to develop a plain-error argument on appeal.  Indeed, his appellate brief does not even mention the words "plain error."  Accordingly, we decline to fashion a plain error argument on Warfel's behalf and then address it sua sponte.  *See* App.R. 16(A)(7); *Coleman v. Coleman*, 9th Dist. Summit No. 27592, 2015-Ohio-2500, ¶ 9.

---

[1] R.C. 2921.22(C) provides that "[n]o person who discovers the body or acquires the first knowledge of the death of a person shall fail to report the death immediately to * * * a law enforcement officer * * * or the coroner in a political subdivision in which the body is discovered, the death is believed to have occurred, or knowledge concerning the death is obtained."

**{¶31}** Warfel's third assignment of error is overruled.

### Assignment of Error IV

**The failure of trial counsel to move for dismissal of the charge of tampering with evidence and abuse of a corpse on the principal of "specific versus general" deprived the Appellant of his right to the effective assistance of counsel.**

**{¶32}** In his fourth assignment of error, Warfel contends that his trial counsel's failure to ask the trial court to dismiss the charges for gross abuse of a corpse and tampering with evidence for the reasons set forth in his previous assignment of error amounted to ineffective assistance of counsel. We disagree.

**{¶33}** "'The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel.'" *State v. Liu*, 9th Dist. Summit No. 24112, 2008-Ohio-6793, ¶ 22, citing *State v. Banks*, 9th Dist. Lorain No. 01CA007958, 2002-Ohio-4858, ¶ 16. "On the issue of counsel's ineffectiveness, [Warfel, as the Appellant,] has the burden of proof because in Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006–Ohio–6679, ¶ 62. To prove ineffective assistance of counsel, Warfel must establish that (1) his trial counsel's performance was deficient, and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate prejudice, an appellant must prove that "there exists a reasonable probability that, were it not for counsel's [deficient performance], the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus. This Court need not address both prongs of *Strickland* if an appellant fails to prove either prong. *State v. Ray*, 9th Dist. Summit No. 22459, 2005–Ohio–4941, ¶ 10.

**{¶34}** It is a well-established principle of statutory construction that specific statutory provisions prevail over conflicting general statutes. *State v. Volpe*, 38 Ohio St.3d 191, 193 (1988). In recognition of this principle, the General Assembly enacted R.C. 1.51, which states:

> If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.

"Thus, it is critical in the first instance to determine whether the statutes upon which the prosecution seeks to proceed are general, special or local. If the statutes are general and do not involve the same or similar offenses, then R.C. 1.51 is inapplicable." *State v. Chippendale*, 52 Ohio St.3d 118, 120 (1990). That is, "R.C. 1.51 comes into play only when a general and a special provision constitute allied offenses of similar import and additionally do not constitute crimes committed separately or with a separate animus for each crime. When this is the case, we must proceed with our analysis of R.C. 1.51." *Id*. "This analysis provides that when the manifest legislative intent was for the two crimes to be enforced coextensively, a defendant may be charged for both." *State v. Venditti*, 134 Ohio App.3d 326, 328 (9th Dist.1999), citing *Chippendale* at paragraph two of the syllabus. "However, when the specific statutory provision prevails over the general statutory provision, the prosecution is prevented from charging a defendant for both the specific and general provisions." *Id*., citing *Chippendale* at paragraph three of the syllabus.

**{¶35}** We conclude that Warfel was not prejudiced by his trial counsel's failure to file a motion to dismiss or otherwise object to the gross abuse of a corpse and tampering with evidence charges on the basis that he should have instead been charged under the purportedly more specific failure to report knowledge of a death statute. Failure to report knowledge of a death in

violation of R.C. 2921.22(C), gross abuse of a corpse in violation of R.C. 2927.01(B), and tampering with evidence in violation of R.C. 2921.12(A)(1) are not irreconcilable offenses as they are distinct crimes concerning different conduct. Chiefly, an individual runs afoul of R.C. 2921.22(C) when they do not immediately report their discovery of a dead body or knowledge of a person's death. Tampering with evidence and gross abuse of a corpse, however, both address conduct beyond merely failing to report a death. Specifically, R.C. 2921.12(A)(1) involves purposefully impairing an active or future official proceeding or investigation by means of altering, destroying, concealing, or removing any record, document, or thing. For example, in this case, Warfel not only failed to immediately report his daughter's death, but by not reporting her death and allowing his daughter's corpse to decompose for nearly six weeks, he prevented law enforcement and the medical examiner from performing their respective official duties, namely establishing a time, location, and/or cause of death. R.C. 2927.01(B), on the other hand, concerns a person's treatment of a corpse. This statute clearly addresses conduct beyond merely failing to report a person's death.

{¶36} Since R.C. 2921.22(C), R.C. 2921.12(A)(1), and R.C. 2927.01(B) each address conduct that is separate and distinct from the others, we determine that failure to report knowledge of a death constitutes a different crime altogether than tampering with evidence and gross abuse of a corpse. Thus, we conclude that R.C. 2921.22(C) is not a more specific version of R.C. 2921.12(A)(1) or R.C. 2927.01(B). Accordingly, Warfel was not prejudiced by his trial counsel's failure to seek the dismissal of the gross abuse of a corpse and tampering with evidence charges on this basis.

{¶37} Warfel's fourth assignment of error is overruled.

III.

{¶38} With all four of Warfel's assignments of error having been overruled, the judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CARR, J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

DAVID L. DOUGHTEN, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.