OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


City of Springdale, Appellant, v. CSX Railway Corporation,
a.k.a. CSX Transportation, Appellee.
[Cite as Springdale v. CSX Ry. Corp. (1994),      Ohio
St.3d      .]
Municipal corporations -- Streets and highways -- Railroad
     crossings -- Municipality has no authority under R.C.
     4955.20 to adopt ordinance requiring railroad company to
     install particular type of railroad crossing on state
     highway without first having plans for crossing approved
     by Director of Transporation.
A municipality has no authority under R.C. 4955.20 to adopt
     an ordinance requiring a railroad company to install
     a particular type of railroad crossing on a state highway
     without first having the plans for the crossing approved
     by the Director of Transportation pursuant to R.C.
     5561.16.
     (No. 92-2448 -- Submitted December 14, 1993 -- Decided
March 2, 1994.)
     Appeal from the Court of Appeals for Hamilton County, No.
C-910757.
     The railroad crossing at issue in this case intersects
State Route 747 in the city of Springdale ("city").  Before
1981, the crossing on Route 747, which was then a two-lane
highway, was made of timber and asphalt.  During 1981, a
program was implemented to widen Route 747 to five lanes.  At
that time, the Baltimore & Ohio Railroad Company ("Baltimore &
Ohio") installed a rubberized crossing called a "Parkco" brand
crossing.  Baltimore & Ohio installed the Parkco crossing
pursuant to an agreement between it and the state of Ohio,
acting through the Director of Transportation.  Under the
agreement the state was to pay ninety percent of the
construction costs with the assistance of federal funds.  The
remaining ten percent of the cost was to be paid by Baltimore &
Ohio.
     CSX Railway Corporation, a.k.a. CSX Transportation,
appellee ("CSX"), is the successor to Baltimore & Ohio and
currently owns, and is therefore responsible for, the tracks
that intersect Route 747.  On average, between thirty-two

thousand and forty thousand vehicles traverse this crossing each day.

The city of Springdale, appellant, notified CSX by letter dated June 13, 1988 that the Parcko crossing had deteriorated and become dangerous to drivers. The city requested that CSX repair the crossing and, in addition, maintain it as a rubberized crossing. CSX responded by stating that it had plans to install a timber and asphalt crossing around September or October 1988. CSX explained that its policy was to install timber and asphalt crossings unless someone else agreed to pay for a rubberized crossing. CSX sent an agreement to the city for it to sign if it wished to have CSX install a rubberized crossing rather than the planned timber and asphalt crossing. Under the agreement the city would pay the entire cost of the materials for the rubberized crossing surface, with CSX paying the installation costs. The cost of purchasing the rubber grade crossing surface was estimated to be no more than $44,000.

The city did not sign the agreement, but instead adopted as an emergency measure Ordinance No. 65-1988. The ordinance, dated October 5, 1988, ordered CSX to "make all repairs necessary to upgrade the rubberized crossing to the present state of the art ***." The ordinance also specified the type of crossing to be installed: "The existing rubber crossing shall be removed and replaced with a Goodyear Super Cushion rubber railroad crossing or an approved equal ***." The ordinance further provided that the replacement was to be done at CSX's expense and within thirty days after CSX received notice of the ordinance.

On May 17, 1989, the city filed a complaint for declaratory judgment in the Common Pleas Court of Hamilton County, alleging that CSX had "refused to perform the ordered repairs to bring the subject railroad crossing into a state of good repair ***." The city asked the court to declare (1) that CSX is obligated under R.C. 4955.20, 4955.21 and 4955.22 to repair the crossing, (2) that CSX must construct a rubberized crossing and not a wooden plank crossing, and (3) that CSX must pay the entire cost of the construction, estimated at $43,000. The city also prayed for $43,000 in damages, attorney fees, costs and whatever other relief to which it may be entitled.

CSX denied the material allegations and asked the court to dismiss the complaint. CSX asserted in its answer (1) that the type of repair requested by the city was "beyond the scope and/or intent of the Ohio Revised Code {4955.20," (2) that the city had no authority to order that the crossing be replaced with a rubberized crossing, and (3) that a previous agreement with the Ohio Department of Transportation preempted the city's ability to order CSX to install a rubberized crossing.

On September 11, 1989, the city and CSX entered into an interim agreement concerning the crossing at State Route 747. CSX agreed to install a rubberized crossing and the city agreed to initially pay the difference between the cost of material for a rubberized crossing and a timber and asphalt crossing. The difference was estimated to be approximately $40,000. The parties also agreed that the city's declaratory judgment action would proceed to a conclusion and that the decision in that case would determine the ultimate liability for the costs of

the repair to the crossing.  A new "Hi-Rail" rubberized crossing was later installed in June 1990.

In the declaratory judgment action, the court held that R.C. 4955.20 confers authority upon the city to order CSX not only to repair the crossing but also to install a particular kind of crossing and that the cost of the selected crossing must be borne by CSX.  CSX had argued that under R.C. 5561.16, only the Director of Transportation has the authority to order the type of repair requested by the city, but the trial court did not find R.C. 5561.16 to be controlling.  Rather, the court found that R.C. 5561.16 was "compatible" with R.C. 4955.20, stating "[n]othing in R.C. 5561.16 purports to amend or super[s]ede R.C. 4955.20."  The court also held that pursuant to R.C. 4955.22, CSX must pay the city a penalty of $30 plus $10 per day from November 28, 1988 to September 11, 1989 because of CSX's failure to comply with the city's order.

CSX appealed and argued that the trial court erred in three respects: (1) the court erred in construing R.C. 4955.20 in such a manner as to require CSX to comply with the city's ordinance, (2) the court's construction of R.C. 4955.20 placed an undue burden on interstate commerce in violation of the Commerce Clause of the United States Constitution, and (3) the court erred in imposing a penalty against CSX.

The court of appeals held that under R.C. 5561.16 only the Director of Transportation has authority to order a railroad, including CSX, to install a particular type of crossing.  It therefore reversed the decision of the trial court and ordered that final judgment be entered in favor of CSX.

In its decision, the court stated that R.C. 5561.16 and 4955.20 are in irreconcilable conflict and that in such a situation the newer, more specific statute modifies the older, more general statute.  The court then held that R.C. 5561.16, first enacted in 1915, is the newer and more specific statute and that it therefore modifies R.C. 4955.20, first enacted in 1891.  The court stated that "R.C. 5561.16 gives the director of transportation the power to determine the 'plans, profiles, and specifications' when *** repairs [to state highways] are made."  Accordingly, the court held that the Director of Transportation "must determine the type of crossing on State Route 747."  On the issue of civil penalties, the court stated that because the city had no authority to order a rubberized crossing on a state highway, CSX was not delinquent in installing such a crossing and was therefore not liable for any penalty.  The court did not reach CSX's Commerce Clause argument because it had ruled in favor of CSX on statutory grounds, thereby rendering the Commerce Clause argument moot.

The cause is now before this court upon the allowance of a motion to certify the record.

Wood & Lamping, David A. Caldwell and Mark R. Fitch, for appellant.

Lindhorst & Dreidame Co., L.P.A., James L. O'Connell and J. Stephen Cox, for appellee.

Wright, J.  The issue in this case is whether the city of Springdale has the statutory authority to order CSX to install a rubberized railroad crossing on State Route 747 in

Springdale. We hold that the city has no such authority and therefore affirm the decision of the court of appeals.

The city claims that R.C. 4955.20 confers upon it the authority to determine the "kind" of railroad crossing to be installed on Route 747. CSX argues that R.C. 4955.20 confers no such authority because R.C. 5561.16 "plac[es] ultimate responsibility for state highway crossing design upon the Director of Transportation." (Emphasis sic.) The city contends, however, that R.C. 5561.16 does not apply to state highways located within municipal corporations. We find that R.C. 5561.16 does apply to the state highway at issue in this case and that this statute negates the city's authority under R.C. 4955.20 to determine the kind of railroad crossing to be installed on a state highway.

R.C. 4955.20 describes a railroad's duties regarding crossings and a municipality's authority over crossings. It provides in relevant part:

"Companies operating a railroad in this state shall build and keep in repair good and sufficient crossings over *** such railroad, its tracks, sidetracks, and switches, at all points where any public highway, street, lane, avenue, alley, road, or pike is intersected by such railroad, its tracks, sidetracks, or switches. *** The board of township trustees shall have power to fix and determine the kind and extent, and the time and manner of constructing, crossings *** outside of municipal corporations.

"The legislative authority of a municipal corporation may exercise the same powers as to crossings *** within municipal corporations as such board exercises concerning crossings *** outside of municipal corporations. Such crossings *** shall be constructed, repaired, and maintained by the railroad companies as so ordered."

R.C. 5561.16 specifically addresses a railroad's duties regarding crossings that intersect state highways. It provides in relevant part:

"Any person, firm, or corporation operating a railroad for the transportation of passengers, freight, or express, crossing at grade any street or road, shall construct, reconstruct, improve, maintain, and repair that portion of the highway at such crossing and lying between the outside ends of the ties, and also that portion lying between the tracks, in the case of two or more tracks, and the cost and expense of this construction, reconstruction, improvement, maintenance, or repair shall be borne by said individual, firm, or corporation. Such construction, reconstruction, improvement, maintenance, or repair shall be done in accordance with plans, profiles, and specifications first approved by the director of transportation, in case of state highways or extensions thereof ***."

R.C. 5561.16 does not distinguish between state highways located within municipalities and those located outside municipalities. We decline to create such a distinction and conclude that R.C. 5561.16 applies to all state highways regardless of their location. It therefore follows that R.C. 5561.16 applies to the crossing at issue here even though the crossing intersects a state highway -- State Route 747 -- located within the city of Springfield.

We also find that R.C. 4955.20 and 5561.16 conflict with each other and that the conflict between them is irreconcilable, i.e., they cannot be construed to give effect to both. A plain reading of R.C. 4955.20 reveals no limitations on the authority of a municipality to determine the kind of railroad crossing within its borders. R.C. 5561.16, however, specifies that when work is to be done on a state highway, the Director of Transportation must approve the "plans, profiles, and specifications" of any construction done to "that portion of the highway at [the] crossing and lying between the outside ends of the ties ***." The parties in this case concede that Route 747 is a state highway. As properly noted by the court of appeals, a city cannot on one hand have unrestricted authority to determine the kind of railroad crossing it wishes to have installed and on the other hand be required to have the construction plans for the crossing "first approved" by the Director of Transportation. Approval by the Director of Transportation is clearly a condition precedent to action by a municipality.

When two statutes are in irreconcilable conflict with each other, "[w]ell-established principles of statutory construction require that specific statutory provisions prevail over conflicting general statutes." State v. Volpe (1988), 38 Ohio St.3d 191, 193, 527 N.E.2d 818, 820. See, also, R.C. 1.51. R.C. 5561.16 is a specific statute because it specifically addresses the procedure that must be followed when repair or construction is done on railroad crossings on state highways. R.C. 4955.20 is a general statute because it speaks generally of railroad crossings without distinguishing between state highways and other roads.

The only exception to the rule set forth above occurs when "'the general provision is the later provision and the manifest intent [of the General Assembly] is that the general provision prevail.'" (Emphasis added.) State v. Chippendale (1990), 52 Ohio St.3d 118, 121, 556 N.E.2d 1134, 1137, quoting R.C. 1.51. There was no showing of such "manifest intent" here. There is nothing in the current R.C. 4955.20 or its history to indicate that the General Assembly intended for R.C. 4955.20 to prevail over R.C. 5561.16.

Accordingly, we find in this case that the specific R.C. 5561.16 controls over the general R.C. 4955.20. Under R.C. 5561.16, the Director of Transportation must first approve the type of repairs made to railroad crossings intersecting state highways, including the type of crossings to be installed. This requirement is binding on the city of Springdale notwithstanding the grant of authority to municipalities in R.C. 4955.20. We therefore hold that the city of Springdale has no authority under R.C. 4955.20 to adopt an ordinance requiring CSX to install a particular type of railroad crossing on a state highway without first having the plans for the crossing approved by the Director of Transportation pursuant to R.C. 5561.16.

The judgment of the court of appeals is affirmed.

Judgment affirmed.

Moyer, C.J., A.W. Sweeney, Douglas, Resnick and F.E. Sweeney, JJ., concur.

Pfeifer, J., dissents.