OPINION
{¶ 1} Defendant-appellant, Ida Hayes, appeals from a Mahoning County Common Pleas Court judgment convicting her of two counts of tampering with records following a jury trial.
 {¶ 2} Appellant is the president of Hayes DD Towing (Hayes Towing). On February 22, 2004, Southern Park Mall Security called Hayes Towing to remove a vehicle that had been sitting in the mall parking lot for an extended time. Hayes Towing took the 2000 Pontiac Bonneville to its lot in Boardman, Ohio. The Bonneville had been stolen from Youngstown Buick Pontiac GMC. However, this fact went undiscovered for some time
 {¶ 3} When no one showed up to pay for the tow or storage, Hayes Towing eventually completed an Ohio Bureau of Motor Vehicles (BMV) Form 3702 and sent it to the BMV in order to obtain title to the Bonneville. The BMV has a policy that if a car is less than five years old, then a check is run to determine if it is stolen when a Form 3702 is submitted. A check on the Bonneville revealed that it was stolen. Consequently, the process was terminated and the Ohio State Highway Patrol was assigned to investigate further.
 {¶ 4} Trooper Michael Russell was assigned to investigate the matter. He went to Hayes Towing and spoke with appellant. According to the Form 3702 submitted by Hayes Towing, the Bonneville was "abandoned, stripped, junk." But Trooper Russell inspected the car and found no apparent damage. The Form 3702 listed the Bonneville's blue book value as $11,550. It listed the cost of repairs required as $8,850. It listed the cost for towing and storage as $2,885. It listed the value of the Bonneville as $185. Based on the Form 3702, if the value of the vehicle is $2,500 or less, the person applying for title of the vehicle can receive title. According to Trooper Russell, appellant admitted that the storage fees were adjusted so that the Bonneville's value would be less than $2,500.
 {¶ 5} In a separate incident, on June 15, 2003, Hayes Towing was called to the Southern Park Mall to tow a 2001 Dodge Caravan. The occupants of the van had been arrested for theft. Hayes Towing towed the van to its lot. Both the investigating *Page 2 
officer and the tow truck driver signed the towing inventory indicating "no visible damage" to the van.
 {¶ 6} According to Boardman Detective Glenn Patton, Hayes Towing submitted a Form 3702 in an attempt to claim title to the van. The form stated that the van was "wrecked severely" and that its value was "zero," contrary to the van's actual condition. Thus, its value as indicated on the Form 3702 was less than $2,500.
 {¶ 7} On December 29, 2005, a Mahoning County grand jury indicted appellant on two counts of tampering with records in violation of R.C. 2913.42(A)(1)(B)(1)(4), third-degree felonies.
 {¶ 8} The matter proceeded to a jury trial. After plaintiff-appellee, the State of Ohio, presented its case, appellant filed two motions: (1) a motion to dismiss the indictment; and (2) a motion for acquittal. In the first motion, appellant alleged that her indictment failed to include several elements and should be dismissed for failure to charge an offense. In the second motion, appellant argued that she could not be convicted under the general tampering with records statute because a more specific statute involving conduct concerning BMV Form 3702 applied to her.
 {¶ 9} The trial court denied both motions. The jury subsequently convicted appellant as charged. The trial court sentenced appellant to two years of community control. It also fined her $10,000 on each count, suspended $9,000 on each count, and ordered that she pay the balance of $2,000 within one year.
 {¶ 10} Appellant filed a timely notice of appeal on August 10, 2007.
 {¶ 11} Appellant raises four assignments of error, the first of which states:
 {¶ 12} "THE TRIAL COURT DENIED APPELLANT DUE PROCESS BY PERMITTING HER TO STAND TRIAL, BE CONVICTED, AND BE SENTENCED WHEN THE TRIAL COURT LACKED JURISDICTION."
 {¶ 13} The statute under which appellant was convicted provides: *Page 3 
 {¶ 14} "(A) No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of the following:
 {¶ 15} "(1) Falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record;
 {¶ 16} "* * *
 {¶ 17} "(B)(1) Whoever violates this section is guilty of tampering with records.
 {¶ 18} "* * *
 {¶ 19} "(4) If the writing, data, computer software, or record is kept by or belongs to a local, state, or federal governmental entity, a felony of the third degree."
 {¶ 20} Count one of the indictment provided:
 {¶ 21} "[O]n or about April 28, 2004 at Mahoning County, IDA HAYES, knowing she had no privilege to do so, and with purpose to defraud, falsify, destroy, remove, conceal, alter, deface, or mutilate a writing, computer software, data, computer data or record. In violation of Section 2913.42(A)(1)(B)(1)(4) of the Revised Code, a Felony of the Third Degree, against the peace and dignity of the State of Ohio."
 {¶ 22} Count two was worded exactly the same except for listing a different date.
 {¶ 23} After the state rested its case, appellant moved to dismiss the indictment asserting that it did not properly charge the elements of felony tampering with records. (Tr. 440). The indictment failed to include the language that the record in question belongs to or is kept by a governmental entity. The state moved to amend the indictment to insert this language. (Tr. 444). The trial court never actually granted the state's motion to amend. Instead it overruled appellant's motion, finding, "there is sufficient notice to the defendant indicating that it is a felony of the third degree and that all the other elements are spelled out properly in the indictment." (Tr. 448). *Page 4 
 {¶ 24} Appellant argues that the indictment failed to properly charge her with felony tampering with records and, therefore, the trial court lacked jurisdiction in this case. She contends that because a grand jury did not issue an indictment containing the missing element that the record belonged to a governmental entity, the indictment did not charge her with the stated offense. Appellant argues that the elements listed in the indictment were only sufficient to charge her with a misdemeanor. She points out that it is the addition of the element that the record belonged to a governmental entity that elevates the crime of tampering with records from a first-degree misdemeanor to a third-degree felony. Appellant argues that the trial court did not have the authority to amend the indictment in a way to raise the offense charged from a misdemeanor to a felony.
 {¶ 25} First we must establish whether plain error review applies here. Appellant failed to object to the alleged defect in the indictment until after the state rested its case.
 {¶ 26} In support of its plain-error argument, appellee relies on the Ohio State Supreme Court case of State v. Noling, 98 Ohio St.3d 44,781 N.E.2d 88, 2002-Ohio-7044. Noling was a death penalty case where the defendant argued, among other things, that the indictment failed to properly charge the felony-murder death penalty specifications. At the close of the state's case, the defendant moved to dismiss the specifications based on this reason. The state did not move to amend the indictment and the trial court overruled the defendant's motion. However, the court properly charged the jury on the missing element in the specifications.
 {¶ 27} The Supreme Court found significant that the defendant never complained about the language missing from the specifications until the state rested its case. Id. at ¶ 61. It pointed out that under the Criminal Rules, objections based on defects in the indictment must be raised before trial and the failure to do so constitutes waiver of the issue. Id., citing Crim. R. 12(C) and (H). Therefore, the Court proceeded with a plain error analysis. *Page 5 
 {¶ 28} Crim. R. 12(C)(2) provides generally that defenses and objections based on defects in the indictment shall be raised prior to trial. However, the rule also provides two exceptions: (1) when the indictment fails to show jurisdiction in the court and (2) when the indictment fails to charge an offense. Crim. R. 12(C)(2).
 {¶ 29} Here appellant raised her objection at the close of the state's case. But she asserted that the indictment failed to charge an offense, not that it simply left out an element of the offense. The failure to include the missing element left the charges in appellant's indictment as first-degree misdemeanors. Tampering with records is generally a first-degree misdemeanor. R.C. 2913.42(B)(2)(a) and (3)(a). It is the addition of the specification that the records belonged to a governmental entity that elevates the crime to a third-degree felony. R.C. 2913.42(B)(4). If the indictment failed to charge the offense, then the trial court would not have had subject matter jurisdiction. A lack of subject matter jurisdiction may be raised at any time during the proceedings. Thus, this case is distinguishable from Noling and appellant's objection was timely. Consequently, plain error review does not apply.
 {¶ 30} The sufficiency of an indictment is a question of law which this court is to review de novo. State v. Smith, 4th Dist. No. 06CA7,2007-Ohio-502, at ¶ 26.
 {¶ 31} Defendants have a constitutional right to have all elements of the crime charged stated in the indictment. State v. Shuttlesworth
(1995), 104 Ohio App.3d 281, 286, 661 N.E.2d 817. A conviction based on an indictment that fails to include all essential elements of the crime charged is void for lack of subject matter jurisdiction. State v.Conley, 5th Dist. No. 03-CA-18, 2005-Ohio-3257, citing State v.Cimpritz (1953), 158 Ohio St. 490, 110 N.E.2d 416, at paragraph six of the syllabus.
 {¶ 32} Here the indictment failed to include the element that the record in question belonged to a governmental entity. The indictment did specify the proper statutory section, R.C. 2913.42(A)(1)(B)(1)(4). But Crim. R. 7(B) provides separate requirements for listing the numerical designation and the essential elements of the offense. And Crim. R. 33(E)(1) provides that no conviction will be reversed in any court because of an "inaccuracy or imperfection in the indictment, * * *provided that *Page 6 the charge is sufficient to fairly and reasonably inform the defendantof all the essential elements of the charge against him." (Emphasis added.) In this case, the indictment failed to reasonably inform appellant of the element that raised her charged offense from a first-degree misdemeanor to a third-degree felony.
 {¶ 33} In its brief, appellee argues that the bill of particulars provided appellant with notice of the missing element. The bill of particulars provided in part:
 {¶ 34} "[O]n or about November 7, 2003 and April 29, 2004, in the County of Mahoning and State of Ohio, Ida Hayes, president of Hayes DD Towing, Inc., did, without privilege to do so, and with purpose to defraud or knowledge that she was facilitating a fraud, falsify and/or alter a writing and/or record that belonged to, or was kept by agovernmental entity, the Ohio Bureau of Motor Vehicles." (Emphasis added).
 {¶ 35} Nevertheless, "[i]t is fundamental that a bill of particulars cannot cure a defective indictment." State v. Hous, 2d No. 02CA116,2004-Ohio-666, at ¶ 11. Thus, the bill of particulars could not have remedied the defect in the indictment.
 {¶ 36} This case bears a striking resemblance to Hous, supra. InHous, the defendant was convicted of aggravated burglary. He appealed arguing that the indictment failed to charge an element of the offense. Specifically, he pointed out that the indictment failed to include any reference to the deadly weapon/dangerous ordnance element of aggravated burglary. The Second District agreed. It also found that although the defendant failed to raise this issue in the trial court, it was not waived. Id. at ¶ 17. It found that the failure to include the deadly weapon/dangerous ordnance element in the indictment was a jurisdictional defect, which could be raised on appeal for the first time. Id. The court reasoned:
 {¶ 37} "Even had he objected, the court could not have cured the defect by amending the indictment to include the deadly weapon/dangerous ordnance element. That would have changed the identity of the offense with which Hous was charged. Crim. R. 7(D) prohibits an amendment to that effect. To properly charge Aggravated Burglary, reindictment was required." Id. *Page 7 
 {¶ 38} The court concluded that because the indictment failed to charge the offense of aggravated burglary, it failed to invoke the trial court's jurisdiction to enter a judgment of conviction for that offense, and the defendant's conviction for aggravated burglary was therefore void. Id. at ¶ 18. In so ruling, it relied on Cimpritz, 158 Ohio St. at paragraph six of the syllabus, where the Ohio State Supreme Court held that a judgment of conviction based on an indictment which does not charge an offense is void for lack of subject matter jurisdiction.
 {¶ 39} But the court's analysis did not end there. It went on to point out that the defendant's indictment fully and adequately alleged a violation of the burglary statute. Id. at ¶ 19. It noted that the burglary section was identical to the aggravated burglary section charged in the indictment, except that burglary does not contain a deadly weapon/dangerous ordnance element. Id. The court continued:
 {¶ 40} "The indictment fully alleged the offense of Burglary, as it is defined by R.C. 2911.12(A)(1), because every element of that offense is contained within Aggravated Burglary as R.C. 2911.11(A)(2) defines it and as that offense was charged in the indictment. Therefore, when the jury returned a verdict of guilty on the Aggravated Robbery charge, it necessarily found that each and every element of Burglary was proved beyond a reasonable doubt." Id. at ¶ 21.
 {¶ 41} The court then pointed out that burglary is a lesser-included offense of aggravated burglary. Id. at ¶ 22. Thus, it reasoned, the defendant could only be convicted of one of the two offenses when they arose out of the same act or transaction and were charged in a single proceeding. Id. Consequently, because the defendant had notice of the burglary charge and because the jury's verdict necessarily found him guilty of committing all the essential elements of burglary, the court determined that the proper remedy was to reverse the defendant's conviction for aggravated burglary and return the case to the trial court to enter a judgment of conviction and sentence against him for burglary. Id. at ¶ 25.
 {¶ 42} As in Hous, the indictment here failed to set out the element that elevated the offense charged from a misdemeanor to a felony. Therefore, the *Page 8 
indictment did not properly charge a felony offense. However, also like in Hous, the misdemeanor here was a lesser-included offense of the improperly charged felony. Misdemeanor tampering with records is a lesser-included offense of felony tampering with records. The state must prove all of the same elements with the exception of the record belonging to a governmental entity. The jury found that the state proved all of the elements of felony tampering with records beyond a reasonable doubt. Therefore, it necessarily also found that appellant committed misdemeanor tampering with records. Consequently, the result here is the same as it was in Hous. Appellant had notice of the misdemeanor tampering with records charge and the jury's verdict necessarily found her guilty of committing all the essential elements of misdemeanor tampering with records. Therefore, the proper remedy here is to reverse appellant's convictions for felony tampering with records and return the case to the trial court to enter judgments of conviction and sentence against her for misdemeanor tampering with records.
 {¶ 43} Furthermore, at oral argument, appellee conceded that the indictment failed to properly charge felony tampering with records and that it only charged misdemeanor tampering with records. Therefore, it too concluded that appellant's convictions should be reduced to misdemeanors.
 {¶ 44} Accordingly, appellant's first assignment of error has merit.
 {¶ 45} Appellant's second assignment of error states:
 {¶ 46} "THE TRIAL COURT DENIED APPELLANT DUE PROCESS WHEN IT OVERRULED APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL."
 {¶ 47} After the state presented its case-in-chief, appellant filed a motion for acquittal arguing that the state could not convict her under the tampering with records statute because a more specific statute applied to the facts of her case. Particularly, she claimed that R.C. 4505.101 applied to the facts of her case. The trial court overruled appellant's motion. (Tr. 439-40). *Page 9 
 {¶ 48} R.C. 4505.101 provides the process for which a garage or storage owner may obtain title to an unclaimed vehicle valued at less than $2,500. The statute states, in pertinent part:
 {¶ 49} "The owner of any repair garage or place of storage in which a motor vehicle with a value of less than two thousand five hundred dollars has been left unclaimed for fifteen days or more following completion of the requested repair or the agreed term of storage may send by certified mail, return receipt requested, to the last known address of the owner a notice to remove the motor vehicle. If the motor vehicle remains unclaimed by the owner for fifteen days after the mailing of the notice, and the person on whose property the vehicle has been abandoned has received the signed receipt from the certified mail or has been notified that the delivery was not possible, the person shall obtain a certificate of title to the motor vehicle in the person's name in the manner provided in this section.
 {¶ 50} "The owner of the repair garage or place of storage that mailed the notice shall execute an affidavit that all of the requirements of this section necessary to authorize the issuance of a certificate of title for the motor vehicle have been met. The affidavit shall set forth the value of the motor vehicle when unclaimed as determined in accordance with standards fixed by the registrar of motor vehicles; the length of time that the motor vehicle has remained unclaimed; the expenses incurred with the motor vehicle; that a notice to remove the vehicle has been mailed to the titled owner, if known, by certified mail, return receipt requested; and that a search of the records of the bureau of motor vehicles has been made for outstanding liens on the motor vehicle.
 {¶ 51} "No affidavit shall be executed or filed under this section until after a search of the records of the bureau of motor vehicles has been made. If the research reveals any outstanding lien on the motor vehicle, the owner of the repair garage or place of storage of the motor vehicle shall notify the mortgagee or lienholder by certified mail, return receipt requested, stating where the motor vehicle is located and the value of the vehicle. Unless the mortgagee or lienholder claims the motor vehicle *Page 10 
within fifteen days from the mailing of the notice, the mortgagee's mortgage or the lienholder's lien shall be invalid.
 {¶ 52} "Upon presentation by the owner of the repair garage or place of storage of the affidavit, showing compliance with all requirements of this section to the clerk of courts of the county in which the repair garage or place of storage is located, the clerk of courts shall issue a certificate of title, free and clear of all liens and encumbrances, to the owner of the place of storage." R.C. 4505.101(A).
 {¶ 53} The statute goes on to state, "[w]hoever violates this section shall be fined not more than two hundred dollars, imprisoned not more than ninety days, or both." R.C. 4505.101(B). The statute does not reference the Ohio BMV or Form 3702.
 {¶ 54} Appellant argues that because R.C. 4505.101 provides a specific penalty for this type of crime, she could not be convicted for violating the general tampering with records statute. She points out that in the rules of statutory construction, specific statutes prevail over conflicting general statutes.
 {¶ 55} It is well established that specific statutory provisions prevail over conflicting general statutes. To this effect, R.C. 1.51
provides:
 {¶ 56} "If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."
 {¶ 57} Appellant relies in part on State v. Volpe (1988),38 Ohio St.3d 191, 527 N.E.2d 818, where the defendants argued on appeal that the General Assembly stated a specific intent to charge with a misdemeanor, not a felony, first-time gambling offenders who engaged or used a tool in gambling. Therefore, the defendants argued that they were improperly convicted of violating R.C. 2923.24, the possession of criminal tools statute, the violation of which is a fourth-degree felony. The defendants relied on R.C. 2915.02(A)(1) through (5), which states in part that no *Page 11 
person shall engage in bookmaking, promote conduct that facilitates a game of chance for profit, engage in betting or playing a game of chance, or "acquire, possess, control, or operate any gambling device." The statute further provides: "Whoever violates this section is guilty of gambling, a misdemeanor of the first degree. If the offender has previously been convicted of any gambling offense, gambling is a felony of the fourth degree." R.C. 2915.02(F).
 {¶ 58} The Ohio State Supreme Court agreed with the defendants, reasoning:
 {¶ 59} "R.C. 2915.02(A)(5) and 923.24 are irreconcilable. R.C. 2915.02(A)(5), in conjunction with R.C. 2915.02(F), treats possession of a gambling device as a first degree misdemeanor. As such, a person convicted of violating R.C. 2915.02(A)(5) could receive no prison sentence or a prison sentence of up to six months. See R.C. 2929.21. R.C. 2923.24 makes possession of criminal tools, arguably such instruments as gambling devices, a fourth degree felony, carrying a minimum prison sentence of six months and a maximum prison sentence of five years. See R.C. 2929.11. Therefore, since R.C. 2915.02 and 2923.24
provide for different penalties for the same conduct, they cannot be construed to give effect to both. R.C. 2915.02 and 2923.24 were enacted effective January 1, 1974, as part of the modern Ohio Criminal Code. Therefore, under R.C. 1.51, the general law, R.C. 2923.24, does not prevail as being the `later adoption.' Further, the fact that the General Assembly enacted R.C. 2915.02(A)(5) to reach possession and control of gambling devices indicates that it did not intend for R.C. 2923.24 to reach possession and control of such devices." (Footnote omitted.) Id. at 193-94.
 {¶ 60} The Court then concluded:
 {¶ 61} "Given that the General Assembly clearly enacted R.C. 2915.02(A)(5) to reach criminal possession and control of a gambling device and classified such conduct as a misdemeanor of the first degree under R.C. 2915.02(F), we hold that R.C. 2923.24, a general statute prohibiting possession and control of criminal tools and classifying such conduct as a fourth degree felony, cannot be used to charge and convict a person of possessing and controlling a gambling device." Id. at 194. *Page 12 
 {¶ 62} The Court later elaborated on its Volpe decision in State v.Chippendale (1990), 52 Ohio St.3d 118, 556 N.E.2d 1134. InChippendale, the defendant was convicted of involuntary manslaughter and vehicular homicide. He appealed arguing that the specific vehicular homicide statute prevailed over the more general involuntary manslaughter statute, and therefore, his conviction for involuntary manslaughter was void. The court of appeals reversed the defendant's involuntary manslaughter conviction, relying on Volpe, supra.
 {¶ 63} The Ohio Supreme Court disagreed with the court of appeals and reinstated the defendant's conviction. The Court first quoted R.C. 1.51, noting that specific statutes generally prevail over general statutes. Id. at 120. It then set out the steps to follow in analyzing whether one statute prevails over another. First, the court must determine whether the statutes in question are general, special, or local. Id. Second, if one of the statutes is general and one is specific and if they involve the same or similar offenses, then the court must determine whether the offenses constitute allied offenses of similar import. Id. If the offenses are allied offenses, then, "`the indictment or information may contain counts for all such offenses, but the defendant may be convicted of [that is, sentenced on] only one.'" Id., quoting R.C. 2941.25(A). An exception applies if either crime was committed separately or if there was a separate animus for each crime. Id. The Court summed up this part of the analysis stating that R.C. 1.51 only applies when a general and a special provision constitute allied offenses of similar import and do not constitute crimes committed separately or with a separate animus for each crime. Id. The Court went on:
 {¶ 64} "Where it is clear that a general provision of the Criminal Code applies coextensively with a special provision, R.C. 1.51 allows a prosecutor to charge on both. Conversely, where it is clear that a special provision prevails over a general provision or the Criminal Code is silent or ambiguous on the matter, under R.C. 1.51, a prosecutor may charge only on the special provision. The only exception in the statute is where ` * * * the general provision is the later provision and the manifest intent is that the general provision prevail.' Thus, unless the legislature enacts or *Page 13 
amends the general provision later in time and manifests its intent to have the general provision apply coextensively with the special provision, the special provision must be the only provision applied to the defendant." Id. at 120-21.
 {¶ 65} We must apply the Supreme Court's analysis to the statutes in question here. Both parties agree that R.C. 4504.101 is a specific statute, while R.C. 2913.42 is a general statute. The parties also agree that the two statutes involve the same or similar conduct. That leaves us to consider whether the offenses defined in the statutes are allied offenses of similar import.
 {¶ 66} The applicable test to determine whether two offenses are allied offenses of similar import is as follows: If the elements of the offenses correspond so that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import; but if the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends. State v. Ranee (1999),85 Ohio St.3d 632, 636, 710 N.E.2d 699. When determining whether offenses are allied offenses of similar import, the elements of the offenses are to be compared in the statutory abstract. Id. at 637. However, an exact alignment of elements is not required. State v.Cabrales, 118 Ohio St.3d 54, 886 N.E.2d 181, 2008-Ohio-1625, at ¶ 27.
 {¶ 67} The elements of tampering with records pursuant to R.C. 2913.42(A)(1) are: (1) No person, knowing the person has no privilege to do so; (2) with purpose to defraud or knowing that the person is facilitating a fraud; (3) shall falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record. In order to commit a violation of R.C. 2913.42(A)(1), the offender must act knowingly and with the purpose to defraud.
 {¶ 68} As appellee points out an R.C. 4505.101 violation is a strict liability offense. No culpable mental state is set out in that section. "When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense." R.C. 2901.21
(B). *Page 14 
 {¶ 69} Consequently, if an offender commits a violation of R.C. 4505.101, the strict liability offense, he has not necessarily committed a violation of R.C. 2913.42(A)(1) because he has not necessarily acted knowingly and with the purpose to defraud. And if an offender commits a violation of R.C. 2913.42(A)(1), he has not necessarily committed a violation of R.C. 4505.101 either. An offender can knowingly, and with the purpose to defraud, falsify or destroy a writing or record without such writing or record being involved in getting a certificate of title for an abandoned vehicle as contemplated by R.C. 4505.101. Thus, the two offenses are not allied offenses of similar import.
 {¶ 70} Because tampering with records and a violation of R.C. 4505.101
are not allied offenses of similar import, the state was free to charge appellant with either or both offenses. See Chippendale,52 Ohio St.3d at 120. Additionally, R.C. 1.51 does not apply because it only applies when a general provision and a special provision constitute allied offenses of similar import. Id.
 {¶ 71} Accordingly, appellant's second assignment of error is without merit.
 {¶ 72} Appellant's third and fourth assignments of error share a common basis in law and fact. Therefore, we will address them together. They state:
 {¶ 73} "APPELLANT WAS DENIED DUE PROCESS, SEE U.S. CONST., AMEND. XIV
AND OHIO CONST., ART. I, §§ 1, 2, AND 16 WHEN THE TRIAL COURT OVERRULED HER MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO OHIO CRIM.R. 29 AND ALLOWED THE TAMPERING CHARGES TO BE SUBMITTED TO THE JURY UPON INSUFFICIENT EVIDENCE."
 {¶ 74} "THE TRIAL COURT ERRED BY ENTERING CONVICTIONS THAT WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 75} Appellant argues that her convictions were against both the weight and the sufficiency of the evidence. She points to the testimony of Marlene Darr and Detective Patton for support. She asserts that Darr testified that an honest mistake was made as to the Bonneville and that Detective Patton signed paperwork stating *Page 15 
that she complied with the law. Thus, she claims that the state failed to prove that she acted with the purpose to defraud.
 {¶ 76} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict.State v. Smith (1997), 80 Ohio St.3d 89, 113, 684 N.E.2d 668. In essence, sufficiency is a test of adequacy. State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith, 80 Ohio St.3d at 113.
 {¶ 77} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, 78 Ohio St.3d at 387. "Weight of the evidence concerns `the inclination of the greater amountof credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.
 {¶ 78} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 79} Because we have already determined that appellant's indictment was defective and did not properly charge felony tampering with records, we will review her arguments here as they apply to her convictions for misdemeanor tampering with records. As stated above, the jury necessarily found that appellant knowingly, *Page 16 
without privilege to do so, and with the purpose to defraud, falsified a writing, data, or record. R.C. 2913.42(A)(1). In order to determine if appellant's convictions are supported by the sufficiency and the weight of the evidence, we must consider the evidence presented at trial.
 {¶ 80} Boardman Police Officer Michael Salser was the first witness to testify. Officer Salser stated that he was involved in the arrest of two people suspected of theft near the Southern Park Mall. (Tr. 194). The two arrestees were driving a Dodge Caravan. Pursuant to police policy, the van was towed. (Tr. 195). Prior to having a vehicle towed, the police fill out a tow form for the vehicle. (Tr. 197-98). Officer Salser filled out the tow form for the van. (Tr. 196). On the form there is a space for the officer to note any damage to the vehicle and its condition. (Tr. 198). For the van, Officer Salser specifically noted, "No visible damage." (Tr. 198; State Ex. 1). The form was also signed by the Hayes Towing driver, although his signature was not discernable. (Tr. 198). One copy of this tow form accompanies the tow truck driver and the towed vehicle. (Tr. 200).
 {¶ 81} Next, Boardman Police Sergeant John Allsopp testified. Sergeant Allsopp was involved with the arrest Officer Salser described. He stated that he agreed with Officer Salser's statement that there was no visible damage to the van involved. (Tr. 214-15). Sergeant Allsopp specifically recalled that the van was in "outstanding condition." (Tr. 215).
 {¶ 82} Boardman Police Detective Glenn Patton testified next. He stated that the Boardman Police Department has several towing companies that it calls on a rotating basis when it needs to have a vehicle towed. (Tr. 235-36). Hayes Towing was one of the tow companies previously used. (Tr. 236). Detective Patton testified that he filled out a BMV Form 3701 for the van in question. (Tr. 238). He stated that a Form 3701 is basically the police equivalent to the civilian Form 3702, which is used for a towing company to obtain title to an abandoned vehicle valuing less than $2,500. (Tr. 239). He further stated that he eventually went to Hayes Towing, although he did not see the van. (Tr. 240-41). Detective Patton testified that he later *Page 17 
received paperwork from the Mahoning County Clerk of Courts Office including a Form 3702. (Tr. 244). He noticed that the Form 3702 listed that the van was damaged. (Tr. 244). He realized that this conflicted with the tow report, which indicated no damage. (Tr. 244). Detective Patton then contacted the Ohio State Highway Patrol regarding the discrepancy. (Tr. 244). He also noticed in the paperwork from the clerk's office that title of the van had been issued to Hayes Towing. (Tr. 245).
 {¶ 83} Detective Patton then testified regarding the information on the Form 3702. The form was notarized by Hayes Towing employee, Marlene Darr. (Tr. 247; State's Ex. 4). The Form 3702 has a section to list the extent of any damage. (Tr. 248; State's Ex. 4). In that section, someone wrote, "wrecked severly [sic]." (Tr. 248; State's Ex. 4). The NADA Blue Book value of the van is listed as $9,550. (Tr. 249; State's Ex. 4). The estimated cost of repairs is listed as $8,500. (Tr. 249; State's Ex. 4). The tow and storage cost is listed as $1,525. (Tr. 249; State's Ex. 4). Therefore, the total value of the van is listed at zero. (Tr. 249; State's Ex. 4). The Form 3702 is signed by Hayes Towing, appellant as president. Detective Patton further testified that the van is currently registered to appellant. (Tr. 250).
 {¶ 84} Ohio State Trooper Michael Russell testified next. Trooper Russell investigated appellant regarding the Bonneville. He stated that it is part of his duties to investigate whether newer cars for which a Form 3702 is submitted are reported stolen. (Tr. 285-86). Because the Bonneville was reported stolen, Trooper Russell went to speak to Hayes. (Tr. 286-87). He stated that he viewed the Bonneville there and photographed it as well. (Tr. 288). As Trooper Russell's photographs revealed, the Bonneville did not appear to have any damage. (State's Exs. 5-20). He also testified as much. (Tr. 339). Trooper Russell additionally ran a check which revealed that the Bonneville had not been in any wrecks. (Tr. 298-99).
 {¶ 85} Trooper Russell also had a copy of the Form 3702 from Hayes Towing that was sent to the BMV for the Bonneville. (Tr. 288-89). The condition of the vehicle was listed as, "abandoned, stripped, junk." (Tr. 289; State's Ex. 22). The *Page 18 
NADA Blue Book value was listed as $11,550. (Tr. 290; State's Ex. 22). The estimated cost of repair was listed as $8,850. (Tr. 290; State's Ex. 22). Towing and storage costs were listed as $2,885. (Tr. 290; State's Ex. 22). The total value of the Bonneville was listed as $185. (Tr. 290; State's Ex. 22). Appellant, however, never signed the Form 3702. (Tr. 334).
 {¶ 86} Trooper Russell also testified regarding what appellant told him. According to Trooper Russell, appellant stated that while Darr filled out the Form 3702, appellant made the determination as to which vehicles to file Form 3702's on. (Tr. 296). Appellant also told Trooper Russell that she instructed Darr to adjust the figures for the storage costs. (Tr. 296). Appellant further told Trooper Russell that she told Darr to leave blank the line for the Bonneville's condition. (Tr. 296-97). And she told him that she did not review the Form 3702 before Darr sent it in. (Tr. 297). Appellant further admitted to Trooper Russell that she had to make adjustments on the figures in the Form 3702 so that the value of the vehicle would be less than $2,500 because she could only receive title to the vehicle if its value was less than $2,500. (Tr. 298). She admitted to Trooper Russell that she gave Darr the numbers to put in the Form 3702. (Tr. 335).
 {¶ 87} Darr was the state's final witness. Darr testified that she filled out the Form 3702 for the Bonneville in the course of her employment at Hayes Towing. (Tr. 347). She stated, however, that in completing the form, she never personally looked at the Bonneville. (Tr. 348). She stated that she took the word of someone else as to the condition of the vehicle and the wrong description was given. (Tr. 350, 386). But she admitted that when Trooper Russell interviewed her, she told him that the only problem with the Bonneville was that it did not have a key. (Tr. 351-52). She stated that this was the first time she actually saw the Bonneville. (Tr. 354).
 {¶ 88} Darr further testified that she was instructed to "work the numbers" on the Bonneville so that a lot of taxes would not be owed. (Tr. 354). And she stated that she adjusted the storage costs upward because appellant instructed her to do so. (Tr. 357). *Page 19 
 {¶ 89} Additionally, Darr testified that she also filled out the Form 3702 for the van in question. (Tr. 359-60). She stated again that she never personally viewed the vehicle. (Tr. 361). Instead, Darr stated that she relied on someone else to provide her with the van's VIN number and condition. (Tr. 361). Interestingly, while the VIN number was correct, Darr claimed that the condition of "severely wrecked" was that of a similar van that had been involved in an accident. (Tr. 361). She stated that when she later realized that the information she had listed on the Form 3702 for the van was wrong, she informed appellant. (Tr. 367). However, by that time, Darr stated that appellant had already received title to the van and did nothing about it. (Tr. 367). She also stated that appellant kept the van and drove it. (Tr. 369).
 {¶ 90} Based on this evidence, the jury's verdict was supported by both the weight and the sufficiency of the evidence. The evidence established that appellant, as president of Hayes Towing, submitted two Form 3702's with false information on them. And while appellant did not personally fill out the forms, she instructed her employee to do so. Appellant told Darr to "work the numbers" so that the value of the Bonneville would come up to less than $2,500, which was required in order for her to gain title to the vehicle. And when Darr informed appellant that the information she had submitted to the BMV on the van was incorrect because she believed the van to be wrecked, appellant chose to do nothing about it. Furthermore, appellant signed the Form 3702 for the van that indicated that it was "wrecked severely." Her signature was then notarized by Darr. She did this even though she was in possession of the tow form from Boardman Police indicating that the van had "no visible damage." Additionally, as of the date of the trial, appellant owned the van in her name. All of this evidence established appellant's purpose to defraud.
 {¶ 91} Accordingly, appellant's third and fourth assignments of error are without merit.
 {¶ 92} For the reasons stated above, appellant's convictions for felony tampering with records are hereby reversed and the matter is remanded. On remand, the trial court is to enter judgments of conviction on two counts of *Page 20 
misdemeanor tampering with records. The trial court is to then re-sentence appellant accordingly.
Vukovich, J., concurs.
 Waite, J., concurs. *Page 1