OPINION
{¶ 1} Appellant, Joseph Pepka, appeals the judgment entered by the Lake County Court of Common Pleas. The trial court sentenced Pepka to an aggregate prison term of four years for his convictions on three counts of endangering children.
 {¶ 2} In March 2007, Pepka was living with his girlfriend, Kaysie Perry, and her eight-month-old daughter, M.P., [1] at his apartment in Eastlake, Ohio. On the morning of March 3, 2007, Perry was going to do laundry at the home of Pepka's sister, Jennifer *Page 2 
Fazekas, so Pepka offered to give M.P. a bath. With Perry still in the apartment, Pepka ran some water in the bathtub and then placed M.P. in it. The water was too hot, and M.P. began crying. Pepka took her out and added some cold water, but Perry intervened, determined the water was still too hot, and added more cold water to the bathtub.
 {¶ 3} After completing the bath, Pepka brought M.P. to the bedroom for Perry to dress her. Both noticed that her feet were pink. M.P. was put in her playpen, and Perry and Pepka evidently argued about his inability to properly care for M.P. Perry then went to Fazekas' house, about 20 minutes away.
 {¶ 4} Upon arriving at Fazekas' home, Perry found Fazekas on the phone with Pepka. He said M.P. was having seizures and asked if he should call 9-1-1. Fazekas called Lake West Hospital, where the on-call nurse instructed that M.P. needed to be brought to the emergency room. Perry left for home, and Pepka called 9-1-1.
 {¶ 5} According to Pepka, shortly after Perry left for Fazekas' home, M.P. stopped crying and he thought she was having a seizure. Failing to contact Perry, he called Fazekas. When he hung up, he testified he removed M.P.'s clothes and put her in an eighth of an inch of cold water to revive her; she woke up and commenced crying. He then claims to have wrapped her in two towels and placed her on the living room floor while he called 9-1-1.
 {¶ 6} Responding paramedics described a different scene. They testified to finding M.P. lying half-dressed in wet clothes, on a wet blanket, in the living room, her entire body wet. She was blue-grey and unresponsive. Since her body temperature was so low, they transported her almost immediately to Hillcrest Hospital. While in the *Page 3 
ambulance, the paramedics determined her body temperature was only 85.7 degrees Fahrenheit. They did manage to restore her to consciousness.
 {¶ 7} M.P. was transferred from Hillcrest to Rainbow Babies and Children's Hospital. Dr. Lolita McDavid testified that M.P.'s body temperature had dropped dangerously low; that her left foot was burned from immersion in something hot; and that she suffered from a subdural hematoma and retinal hemorrhages in each eye. She testified these last injuries were consistent with shaking.
 {¶ 8} A social worker from the hospital contacted Eastlake police. Lieutenant Garbo and Detective Bergant went to Pepka's apartment in the evening. Pepka was asleep when they arrived, but he let them in. Eventually, he agreed to speak with them at the station. Pepka signed aMiranda waiver at the station and agreed to a recorded interview.
 {¶ 9} There are discrepancies in Pepka's testimony about that interview, compared to that of the police. Testifying at the suppression hearing for the state, Lieutenant Garbo claimed that the atmosphere was generally cordial. Detective Bergant conducted the principal part of the interview. Lieutenant Garbo testified that at no time was Pepka threatened in any way and that no promises were made to him to gain his cooperation. He testified that at one time Pepka requested an attorney, at which point the interview immediately ceased, and the tape recorder was turned off. He further testified that Pepka then spontaneously admitted that he had burnt M.P.'s feet while bathing her and that Pepka insisted on continuing the interview. He recalled Pepka requesting a cigarette break at one point and accompanying Pepka to the *Page 4 
garage. He admitted that they talked about the case while Pepka smoked, and he warned Pepka that his account did not appear to explain M.P.'s injuries.
 {¶ 10} Testifying on his own behalf at the suppression hearing, Pepka agreed that he accompanied the officers to the police station voluntarily. However, he testified that when he requested counsel and the tape recorder was turned off, Detective Bergant yelled at him and verbally abused him, calling him a liar. He further testified that he did not request a cigarette break, but that he smoked in the garage in the company of Lieutenant Garbo when Detective Bergant insisted on a break to check with his supervisor whether to arrest Pepka or send him home. Pepka further stated that prior to having his cigarette, he was taken to a different room than the one in which the interview took place and locked in it for five minutes. He testified that while smoking his cigarette, Lieutenant Garbo urged him to admit to shaking M.P., because the judge might go easier on him. He testified to requesting an attorney not once, but three or four times.
 {¶ 11} On June 25, 2007, an indictment in three counts was filed against Pepka. Each count read as follows:
 {¶ 12} "On or about the 3rd day of March, 2007, in the City of Eastlake, Lake County, State of Ohio, one JOSEPH PEPKA did recklessly, being the parent, guardian, custodian, person having custody or control, or person in loco parentis of a minor victim, a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, to-wit: eight months of age, create a substantial risk to the health or safety of the said female minor victim, by violating a duty of care, protection, or support. *Page 5 
 {¶ 13} "This act, to-wit: Endangering Children, constitutes a Felony of the Third degree, contrary to and in violation of the Ohio Revised Code, Title 29 § 2919.22(A) and against the peace and dignity of the State of Ohio."
 {¶ 14} On July 13, 2007, Pepka filed a written waiver of his right to appear at arraignment and a written plea of "not guilty" to the charges against him. The matter was set for trial on December 17, 2007. Pepka moved to suppress the statements he made to Lieutenant Garbo and Detective Bergant. A suppression hearing was held on October 18, 2007, and, on November 29, 2007, the motion was overruled.
 {¶ 15} On December 11, 2007, the state moved the trial court to amend the indictment to add this additional language, following the first paragraph in each count: "Which resulted in serious physical harm to the said female minor victim." The state requested this amendment due to the provisions of R.C. 2919.22(E). Pursuant to R.C. 2919.22(E)(2)(a), endangering children pursuant to R.C. 2919.22(A), with which Pepka was charged, is normally a first-degree misdemeanor. The state had charged in the indictment that he had committed third-degree felonies. Violations of R.C. 2919.22(A) rise to third-degree felonies if they involve "serious physical harm to the child" pursuant to R.C. 2919.22(E)(2)(c).
 {¶ 16} On December 12, 2007, the trial court filed its judgment entry, granting the motion to amend.
 {¶ 17} On December 17, 2007, trial commenced. Prior to opening statements, the trial court met with counsel on the record, in chambers. Counsel for Pepka objected to the amendment or, alternatively, requested a two-week continuance. Defense counsel argued that he had not prepared the case with a view to defending the issue of *Page 6 
serious physical harm to M.P. as a principal matter, though he admitted assuming the state might argue the point. He argued that the amendment, however, would put the issue of the seriousness of the injuries sustained squarely to the forefront of the jury's attention. On questioning by the trial court, he admitted knowing the charges brought were for third-degree felonies, not misdemeanors. Defense counsel stated that, in view of the amendment, he wished to obtain expert medical testimony regarding the severity of M.P.'s injuries. The trial court denied the objection to the amendment and denied the continuance request.
 {¶ 18} The state presented several witnesses, including Perry, Dr. McDavid, and Lieutenant Garbo. Following the state's case-in-chief, Pepka moved for acquittal on all three counts pursuant to Crim. R. 29. The trial court denied this motion. Pepka presented two witnesses, as well as testifying in his own defense. After the defense rested, Pepka renewed his Crim. R. 29 motion. The trial court denied his renewed motion. The jury returned verdicts of "guilty" on each count.
 {¶ 19} Prior to commencing the sentencing hearing, the trial court placed the following statement on the record:
 {¶ 20} "The Court will also note that I spoke extensively with counsel in chambers as to the issue of sentencing, and specifically as to the issue of the proper level, or proper degree of the offense of endangering children. And unfortunately that conversation wasn't on the record, but I will summarize right now what we discussed. The Defendant objects to this case being sentenced, the Defendant in this case being sentenced in this case on three felony 3 counts rather than three misdemeanor 1 counts. The argument being that this Court should not have allowed, and this Court *Page 7 
should therefore reverse its decision allowing the State to amend the indictment prior to trial. The Court allowed the state to amend the indictment by making the allegation that serious physical harm was a result of the endangering children. Without that language, the counts would be misdemeanor 1's. With that language the counts are felony 3's. The reason why I allowed the amendment was that it was before trial. That the Defendant was not prejudiced because the indictment states that he was being charged with felonies of the third degree rather than misdemeanors of the first degree. And that the discovery provided and the discussions between counsel at all times leading up to trial was that the child sustained serious physical harm as a result of the endangering children. Had I not permitted the amendment, the State, because it was prior to trial that they moved this, that they moved for the amendment, jeopardy had not yet attached. The State could have dismissed the charges, and then immediately re-indicted and re-filed with that. So I believed at the time that it was harmless error, because the Defendant was fully appraised that the State was pursuing the additional finding. Or if one wants to call it an element, of serious physical harm. I still feel that way, despite the Defendant's raising the issue again. Mr. Patterson did timely object to that amendment and argument was taken at the time prior to trial. And those discussions are on the record. So at this time the Court affirms what its decision was when I allowed the amendment, and the Court does deny the request to convert the convictions from three felony 3's to three misdemeanor 1 level penalties. Have I adequately stated our conversation in chambers, Mr. Purola?
 {¶ 21} "[Mr. Purola]: Yes. A shortened version, but I think it covers all the important points, yes." *Page 8 
 {¶ 22} Thereafter, the trial court sentenced Pepka to serve a two-year term of imprisonment on the first count, three years on the second count, and four years on the third count. The trial court ordered the terms to run concurrently.
 {¶ 23} Pepka raises three assignments of error. His first assignment of error is:
 {¶ 24} "The purported amendment of the indictment by the trial court by adding a material element that elevated the charge from a first degree misdemeanor to a third degree felony is unauthorized by law, and is a nullity."
 {¶ 25} Pepka contends the indictment against him was fatally flawed in charging third-degree felony child endangering, since it did not, prior to amendment, allege the necessary element of his conduct causing serious physical harm to M.P. R.C. 2919.22(E)(2)(c). Consequently, he argues that he could only have been convicted of first-degree misdemeanor child endangering. The state replies that each count of the original indictment alleged Pepka's crimes constituted third-degree felony child endangering, which can only occur if serious physical harm results to the victim, making the amendment, in effect, surplusage.
 {¶ 26} "Section 10 of Article I of the Ohio Constitution provides that, `* * * no person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury * * *.' This provision guarantees the accused that the essential facts constituting the offense for which he is tried will be found in the indictment by the grand jury. Harris v. State (1932), 125 Ohio St. 257,264. Where one of the vital elements identifying the crime is omitted from the indictment, it is defective and cannot be cured by the court as such a procedure would permit the court to convict the accused on a charge different from that found by the grand jury. Id.; State v. *Page 9 Wozniak (1961), 172 Ohio St. 517, 520 * * *." State v. Headley (1983),6 Ohio St.3d 475, 478-479. (Parallel citation omitted.)
 {¶ 27} "An indictment is sufficient if it contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense.Hamling v. United States (1974), 418 U.S. 87, 117,
 {¶ 28} "Crim. R. 7(D) states: The court may at any time before, during, or after trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no changeis made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment * * * the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it appears clearly from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial * * *.
 {¶ 29} "An amendment to the indictment that changes the name or identity of the crime is unlawful whether or not the defendant was granted a continuance to prepare for trial; further, a defendant need not demonstrate that he suffered any prejudice as a result of the forbidden amendment. Middletown v. Blevins (1987), 35 Ohio App.3d 65,67, * * *. A trial court commits reversible error when it permits an amendment that changes the name or identity of the crime charged. [State v. Kittle, 4th Dist. *Page 10 
No. 04CA41, 2005-Ohio-3198, at ¶ 12; State v. Headley, 6 Ohio St. 3d at 478-479.]" State v. Fairbanks, 172 Ohio App.3d 766, 2007-Ohio-4117, at ¶ 15-17. (Parallel citations omitted and emphasis added by Twelfth Appellate District.)
 {¶ 30} "`Whether an amendment changes the name or identity of the crime charged is a matter of law.' State v. Cooper (June 25, 1998), Ross App. No. 97CA2326, 1998 Ohio App. LEXIS 2958, citing State v.Jackson (1992), 78 Ohio App.3d 479, * * *. Hence, we review this question de novo." State v. Kittle, 2005-Ohio-3198, at ¶ 12. (Parallel citation omitted.)
 {¶ 31} Thus, amendments to an indictment changing the name or identity of the crime alleged are flatly forbidden, even when a defendant is not prejudiced thereby. In this case, the name of the crimes alleged was never amended; Pepka was always charged with "endangering children." The question is whether the amendment adding the language specifying the alleged crimes resulted in serious physical harm to the victim — the necessary element for lifting those crimes from first-degree misdemeanors to third-degree felonies — changed the identity of the crimes. As the Supreme Court of Ohio made clear in Headley, the identity of a crime is changed where an amendment purports to add an element that results in subjecting the defendant to a more serious penalty. State v.Headley, 6 Ohio St. 3d at 479.
 {¶ 32} The state argues that the identity of the crime was never changed because the original indictment specified, in the body of each count, that Pepka was being charged with third-degree felony endangering children, a crime which only exists when serious physical harm is suffered by the victim. The problem with this argument is there is no way to tell, from the face of the unamended indictment, whether the *Page 11 
Lake County Grand Jury considered this element, since that indictment failed to contain the language specifying that third-degree felony endangering children must be conduct resulting in serious physical harm. InState v. Colon, the Supreme Court of Ohio emphatically reiterated that a defendant's constitutional right to have each and every necessary element of a crime found by presentment to the grand jury is not to be infringed. See, e.g., State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624. In addition, the Supreme Court of Ohio has again noted, "Crim. R. 7(D) does not permit the amendment of an indictment when the amendment changes the penalty or degree of the charged offense; amending the indictment to change the penalty or degree changes the identity of the offense." State v. Davis, Slip Opinion No. 2008-Ohio-4537, syllabus.
 {¶ 33} The case sub judice is closely analogous to the Twelfth District's decision in State v. Fairbanks, supra. In Fairbanks, the appellant was charged with two counts of intimidation. State v.Fairbanks, 2007-Ohio-4117, at ¶ 5. The caption of the indictment specified that the charges were third-degree felonies brought pursuant to R.C. 2921.04(B), which prohibits attempting to intimidate a witness through "force or unlawful threat of harm to any person or property." Id. at ¶ 5, 7. However, the body of the indictment simply referred to R.C. 2921.04. Id. at ¶ 6. On the day of trial, before opening statements, the state moved to amend the indictment by adding the appropriate "force or threat of harm" language; and, the trial court granted the motion on the basis that the appellant knew, through discovery, that force or threats were at issue. Id. at ¶ 9. The appellant's objection was noted for the record, but not made part of it. Id.
 {¶ 34} The appellant was convicted on each count of intimidation. Id. at ¶ 10. On appeal, the appellant assigned as error the trial court's granting of the amendment to *Page 12 
the indictment. The Twelfth District found the assignment well-taken. Id. at ¶ 23. It stated:
 {¶ 35} "We are aware that the caption or heading of the indictment listed the felony subsection and indicated that the charge was a felony of the third degree. However, the text or body of the indictment did not list the level of the offense or the specific statutory subsection,and most importantly, contained no `force or unlawful threat of harm'element to constitute the felony charge." Id. at ¶ 24. (Emphasis added.)
 {¶ 36} In this case, each count of the original indictment specified the charge was for third-degree felony child endangering — but, the counts lacked the "serious physical harm" specification or element necessary to constitute the felony. Because of that, there is no way to know whether the grand jury found probable cause as to this necessary element of the crime. The indictment was fatally defective. State v.Headley, 6 Ohio St. 3d at 479.
 {¶ 37} Moreover, the Supreme Court of Ohio has recently held that "an indictment that omits an essential element is defective; [and] a court cannot allow an amendment that would allow the court to convict the accused on a charge different from that found by the grand jury."State v. Davis, Slip Opinion No. 2008-Ohio-4537, at ¶ 10. In this matter, there is nothing in the record to establish the grand jury made a finding that there was probable cause the victim sufferedserious physical harm. We disagree with the trial court's conclusion that Pepka was not prejudiced by the amendment to the indictment. The addition of the serious physical harm element was the difference between the offense being a first-degree misdemeanor or a third-degree felony. Thus, the trial court permitted Pepka to be convicted of a charge that was "`essentially *Page 13 
different from that found by the grand jury.'" State v. Davis, at ¶ 12, quoting State v. Headley, 6 Ohio St.3d at 478-479.
 {¶ 38} The trial court erred in amending the indictment.
 {¶ 39} Pepka argues that, in light of the defective amendment to the indictment, he has actually only been convicted of three counts of first-degree misdemeanor endangering children. Thus, he essentially proposes a remedy of amending his convictions from third-degree felonies to first-degree misdemeanors. While the state contends the amendment of the indictment was proper, it does not specifically set forth an alternative argument objecting to Pepka's proposed remedy. In addition, we note Pepka's proposed remedy is consistent with that taken by the Seventh Appellate District:
 {¶ 40} "As in [State v. Hous, 2d Dist. No. 02CA116, 2004-Ohio-666], the indictment here failed to set out the element that elevated the offense charged from a misdemeanor to a felony. Therefore, the indictment did not properly charge a felony offense. However, also like in Hous, the misdemeanor here was a lesser-included offense of the improperly charged felony. Misdemeanor tampering with records is a lesser-included offense of felony tampering with records. The state must prove all of the same elements with the exception of the record belonging to a governmental entity. The jury found that the state proved all of the elements of felony tampering with records beyond a reasonable doubt. Therefore, it necessarily also found that appellant committed misdemeanor tampering with records. Consequently, the result here is the same as it was in Hous. Appellant had notice of the misdemeanor tampering with records charge and the jury's verdict necessarily found her guilty of committing all the *Page 14 
essential elements of misdemeanor tampering with records. Therefore, the proper remedy here is to reverse appellant's convictions for felony tampering with records and return the case to the trial court to enter judgments of conviction and sentence against her for misdemeanor tampering with records." State v. Hayes, 7th Dist. No. 07-MA-134,2008-Ohio-4813, at ¶ 42.
 {¶ 41} Accordingly, we adopt Pepka's proposed remedy and his convictions will be converted to first-degree misdemeanors.
 {¶ 42} Pepka's first assignment of error has merit.
 {¶ 43} Pepka's second assignment of error is:
 {¶ 44} "The trial court erred in overruling the motion to suppress the defendant's statements and allowing them to be heard by the jury because they were obtained in violation of the Fourth and Fifth Amendments of the United States Constitution."
 {¶ 45} We have found merit in Pepka's first assignment of error. However, this finding does not render Pepka's second assignment of error moot. If this court finds that the trial court erred in denying Pepka's motion to suppress, his convictions would be reversed; this matter would be returned to the trial court's docket at the point where the error occurred; and the state would be barred from using the suppressed evidence in a subsequent retrial. See, e.g., State v. Slocum, 11th Dist. No. 2007-A-0081, 2008-Ohio-4157, at ¶ 53-54.
 {¶ 46} "Appellate review of a motion to suppress presents a mixed question of law and fact." State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8. The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence. Id., citing State v. Fanning (1982), 1 Ohio St.3d 19. *Page 15 
Thereafter, the appellate court must independently determine whether those factual findings meet the requisite legal standard. Id., citingState v. McNamara (1997), 124 Ohio App.3d 706.
 {¶ 47} Pepka asserts the trial court erred in denying his motion to suppress. He argues that it is inherently unbelievable that he would have admitted to burning M.P.'s feet, after requesting an attorney, and while the tape recorder was turned off. He cites to his own testimony at the suppression hearing that Detective Bergant verbally abused him while the tape recorder was off; that he was locked in another room for five minutes while Detective Bergant allegedly spoke to a superior about arresting Pepka; that Lieutenant Garbo urged him to admit shaking M.P. when he smoked his cigarette so the judge would go easier on him; and that he requested an attorney multiple times. Pepka contends that, under this scenario, his statements to the police must be considered coerced.
 {¶ 48} Pepka's arguments are based solely on his version of the police interview in question. Lieutenant Garbo's version removes the interview from the realm of police coercion. As trier of fact, the trial court was entitled to credit Lieutenant Garbo's testimony.
 {¶ 49} Pepka's second assignment of error lacks merit.
 {¶ 50} Pepka's third assignment of error is:
 {¶ 51} "Since there was no evidence any of Joseph Pepka's conduct caused any of the child's injuries, or that he `perversely disregarded] a known risk', the evidence is insufficient as a matter of law." *Page 16 
 {¶ 52} We have found merit in Pepka's first assignment of error. However, this finding does not render Pepka's sufficiency argument moot. Should we find merit in Pepka's sufficiency argument, he would be entitled to acquittal and the state would be barred from retrying him due to double jeopardy protections. See State v. Freeman (2000),138 Ohio App.3d 408, 424, citing State v. Thompkins (1997),78 Ohio St.3d 380, 387. In addition, we note that we are adopting Pepka's proposed remedy of converting his felony endangering children convictions to misdemeanor convictions. In spite of this, we will address his sufficiency argument in relation to the felony offenses. There are two reasons for this approach: (1) when the trial court ruled on Pepka's Crim. R. 29 motion, it was in the context of the felony offenses and (2) by statutory definition, if there is sufficient evidence to support the felony convictions, there is sufficient evidence to support the corresponding misdemeanor convictions.
 {¶ 53} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim. R. 29(A). When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia
(1979), 443 U.S. 307.
 {¶ 54} Pepka was charged with endangering children in violation of R.C. 2919.22, which provides, in pertinent part:
 {¶ 55} "(A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a *Page 17 
mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. * * *
 {¶ 56} "(E)(1) Whoever violates this section is guilty of endangering children.
 {¶ 57} "* * *
 {¶ 58} "(c) If the violation is a violation of division (A) of this section and results in serious physical harm to the child involved, [endangering children is] a felony of the third degree[.]"
 {¶ 59} The state presented evidence that M.P. was eight months old at the time of these incidents. In addition, there was evidence presented that Pepka was the live-in boyfriend of M.P.'s mother at the time of the offense. Thus, he stood in loco parentis to M.P. State v. Huff, 5th Dist. No. 2002CA00012, 2003-Ohio-130, at ¶ 18. Moreover, at the time of M.P.'s injuries, the evidence demonstrated Pepka had "control" of M.P., since he was caring for M.P. while Perry was gone from the apartment. Accordingly, the state presented sufficient evidence that Pepka was in control of, or a person in loco parentis of, M.P., who was under 18 years old at the time of her injuries.
 {¶ 60} Pepka argues that none of the evidence relates his conduct directly to M.P.'s injuries. He further argues that the state failed to prove his conduct, if any, was "reckless," which is the required mens rea for endangering children. State v. Swain (Jan. 23, 2002), 4th Dist. No. 01CA2591, 2002 Ohio App. LEXIS 327, at *18. The third element of endangering children requires the state to present evidence that the conduct complained of "recklessly created a substantial risk to the health or safety of the child[.]" Id. R.C. 2901.22(C) defines "recklessly": *Page 18 
 {¶ 61} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
 {¶ 62} Pepka was solely responsible for bathing M.P. at the time he placed her in the bathtub, evidently burning her feet. In his statement to the police, Pepka admitted that he did not check the temperature of the water prior to placing M.P. in the bathtub. The Eighth Appellate District has held that "[i]t is reckless to put a child into bath water that has not been tested." State v. Parker (July 8, 1999), 8th Dist. No 74294, 1999 Ohio App. LEXIS 3231, at *14. We agree. In the case sub judice, there was evidence presented that Pepka failed to check the temperature of the bath water, thereby disregarding a known risk of burning M.P. by placing her into bath water hot enough to cause burns. This conduct could be found to be reckless under R.C. 2901.22(C).
 {¶ 63} Pepka was alone with M.P. in the apartment when she developed hypothermia. In his interview with the police, Pepka admitted that he put M.P. in cold water in an attempt to revive her. Further, the testimony of the responding paramedics, who found M.P. soaking wet and grayish-blue, was sufficient for a jury to infer that Pepka had plunged M.P. in cold water, causing severe hypothermia. The same testimony, along with that of Dr. McDavid, established that M.P.'s body temperature was only 85.7 degrees Fahrenheit, and that she might have died from the hypothermia. The jury could clearly find that plunging a baby into cold water sufficient to cause severe hypothermia is reckless conduct pursuant to R.C. 2901.22(C). *Page 19 
 {¶ 64} The testimony of Dr. McDavid, along with various medical records introduced, provided evidence that M.P. had suffered a subdural hematoma and retinal bleeding, probably due to severe shaking. In his oral statement to the police, Pepka admitted that he shook M.P. in an attempt to wake her up. Shaking a baby sufficiently to cause such injuries is evidence of recklessness.
 {¶ 65} In regard to all three charges, the state presented sufficient evidence that Pepka "recklessly created a substantial risk to the health or safety of the child." State v. Swain, supra, at *18.
 {¶ 66} Next, we will address whether the state presented sufficient evidence on the element of serious physical harm.
 {¶ 67} "`Serious physical harm to persons,' means any of the following:
 {¶ 68} "* * *
 {¶ 69} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 70} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 71} "* * *
 {¶ 72} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5).
 {¶ 73} There was evidence presented that M.P.'s feet were severely burned. Dr. McDavid testified that M.P. suffered partial thickness burns, which are burns "through the epidermis." Further, she testified that she classified some of M.P.'s injuries to her feet as "denuded. Meaning the top layer of skin is off." Finally, Dr. McDavid testified *Page 20 
that the burns to M.P.'s feet would have been painful. Taken together, the evidence presented by the state was sufficient for a jury to find that Pepka's conduct of submerging M.P. into the hot water caused M.P. serious physical harm under either R.C. 2901.01 (A)(5)(c) or (e).
 {¶ 74} Further, the state presented evidence indicating the violent shaking M.P. suffered caused subdural hematoma and retinal damage. At the time of trial, Perry testified that M.P., who was 18 months old at that time, had not started talking, wore eyeglasses, and took physical and speech therapy. The state presented evidence that the injuries resulting from the shaking constituted serious physical harm pursuant to R.C. 2901.01(A)(5)(c) and (e).
 {¶ 75} Finally, there was evidence presented that M.P.'s body temperature was only 85.7 degrees Fahrenheit when the paramedics transferred her to the hospital, resulting in hypothermia. Dr. McDavid testified that a person could enter a coma or die from being in a hypothermic state. As such, the state presented sufficient evidence that Pepka's actions caused M.P. serious physical harm due to the hypothermia pursuant to R.C. 2901.01(A)(5)(b), (c), and (e).
 {¶ 76} The state presented sufficient evidence on each of the elements of third-degree felony endangering children to allow a rational jury to conclude Pepka had committed the crimes for which he was charged beyond a reasonable doubt.
 {¶ 77} Pepka's third assignment of error is without merit.
 {¶ 78} The judgment of the Lake County Court of Common Pleas is reversed, and this matter is remanded for further proceedings consistent with this opinion. Specifically, the trial court is to vacate Pepka's felony endangering children convictions. *Page 21 
Thereafter, the trial court is to enter judgments of conviction on three counts of first-degree misdemeanor endangering children. See State v.Hayes, 2008-Ohio-4813, at ¶ 92. Finally, the trial court shall resentence Pepka on the misdemeanor convictions. Id.
COLLEEN MARY O'TOOLE, J., concurs in part, dissents in part, with Concurring/Dissenting Opinion.
CYNTHIA WESTCOTT RICE, J., concurs in part, dissents in part, with Concurring/Dissenting Opinion.
[1] We will refer to the victim by her initials.